DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENAI PENINSULA CHAPTER - ALASKA FARM BUREAU, INC., <br><br> Plaintiff, <br><br> v. <br><br> MIKE JOHANNS, et al. <br><br> Defendants. | Case No. 3:06-00098-RRB <br><br> **OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND CROSS MOTION TO DISMISS COMPLAINT** |

## INTRODUCTION

Plaintiff is an organization composed, at least in part, of persons who participate in programs administered by the Department of Agriculture's ("USDA") Farm Service Agency ("FSA"). USDA has decided to close the FSA office currently located in Homer, Alaska. According to plaintiff, USDA made that decision without first having undertaken a rigorous analysis that demonstrated the closure would be cost effective. Plaintiff seeks an order from this Court preventing USDA from closing the Homer office until that sort of analysis is done and until USDA establishes the cost-effectiveness of the proposed closure, and plaintiff seeks a

temporary restraining order ("TRO") and preliminary injunction ("PI") to prevent the closure until this litigation is finally concluded in its favor. As we explain below, the Court should dismiss this action or, at a minimum, deny plaintiff's motion.

First, the Court lacks jurisdiction to entertain this suit. The United States cannot be sued without its consent. And waivers of sovereign immunity cannot be implied, but must be explicit and unequivocal in the statutory language. None of the statutes cited in the complaint waives the United States' sovereign immunity. Although the complaint makes no reference to it, the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq., waives the United States' sovereign immunity for certain types of injunctive and declaratory actions. That waiver, however, does not apply where, as here, plaintiffs challenge actions committed to agency discretion by law. See 5 U.S.C. § 701(a)(2). Plaintiff's claims therefore should be dismissed for lack of subject matter jurisdiction.

Because the Court lacks jurisdiction to consider plaintiff's claims, plaintiff has no likelihood of succeeding on them. But plaintiff has no likelihood of success even without regard to its jurisdictional problems. All Pub. L. 109-97 does is require that defendants hold public meetings and provide notice to certain congressional committees and members of its plan to close county or local offices before the decisions are finalized. Plaintiff does not dispute that defendant did precisely that.

Plaintiff also has failed to establish that its members will suffer irreparable injury in the absence of emergency injunctive relief. Plaintiff has not even alleged, let alone shown, that its members' businesses will be significantly harmed by the closure of the Homer office. Quite to the contrary, once the Homer office is closed plaintiff's members will receive better service from

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB   2

defendant than they received in the past. Nor do the balance of hardships or the public interest weigh in plaintiff's favor. By leaving it entirely up to USDA to decide whether to close a particular county office, subject to certain notice requirements to affected FSA customers and Congress itself, Congress has left no doubt that it views USDA's determinations regarding any such closures to be a greater expression of the public interest than the views or concerns of the individual customers any such office serves.

## STATUTORY FRAMEWORK

Public Law 109-97, the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act for Fiscal Year 2006, became law on November 10, 2005. The appropriations act provides "[t]hat none of the funds made available by this Act may be used to pay the salaries or expenses of any officer or employee of the Department of Agriculture to close any local or county office of the Farm Service Agency unless the Secretary of Agriculture, not later than 30 days after the date on which the Secretary proposed the closure, holds a public meeting about the proposed closure in the county in which the local or county office is located, and, after the public meeting but not later than 120 days before the date on which the Secretary approves the closure, notifies the Committee on Agriculture and the Committee on Appropriations of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry and the Committee on Appropriations of the Senate, and the members of Congress from the State in which the local or county office is located of the proposed closure." 119 Stat 2120, 2131.

## FACTS

On November 19, 2004, Chad Padgett, the State Executive Director for the Farm Service Agency, formed a task force to review the delivery of FSA programs in Alaska. Padgett Declaration ¶ 4, Ex. A at 3 [Alaska Farm Service Agency Reorganization Plan FY 2005]. The task force was formed to review program delivery in Alaska and to determine whether the most efficient means of delivery was in use or if the situation needed to change. Id. The task force was to review the operations, keeping service to all producers[1] as the number one priority. Secondary to services, cost efficiencies, good business sense, and the effect on FSA employees were to be considered. Id. The task force was directed to review outreach activities and analyze potential effects to stakeholder groups. Id. ¶ 8. The task force and the Alaska State Committee conducted a very rigorous analysis of County Office operations.

During the time that the task force was considering efficiency, the FSA office administered the Trade Adjustment Assistance Program for Commercial Salmon fishermen (TAA) during FY 2004. The Alaska State Office in Palmer served 4,364 fishermen for a total payout of $5,183,480.00. This was accomplished by using a circuit rider program to deliver services in communities and conducting all administrative actions for applications from the State Office. This system was found to be highly successful as employees located in the field (circuit riders) were able to focus on applicants and their needs, while office needs and administrative work were conducted off-sight (consolidated to the State Office). This experience was considered when deciding whether to consolidate other functions. Id. ¶¶ 10, 11.

---

[1] Those who use FSA programs are referred to as "producers".

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB                    4

The task force recommendations were presented to the State Committee on April 15, 2005.[2] Id. ¶ 20 - g. The task force considered all options, including maintaining the status quo with county offices in Fairbanks, Delta Junction, Palmer, and Homer, but found that maintaining the status quo was not economical. The task force recommended consolidation of the state into two offices. Id. Exhibit A at 17. The State Committee unanimously approved the recommendation to consolidate operations, closing the Homer office and moving its responsibilities. Id. ¶ 20 - g; Exhibit D. At this time, and at the meetings on May 2, May 3, and May 12, 2005, the location of the consolidated offices had not been determined. Id. ¶ 21. The original recommendation called for closing both the Homer and Palmer offices and consolidating their responsibilities in an Anchorage office. Id. ¶ 22. The Alaska State Food and Agricultural Council met on May 6, 2005 and were informed of the plan. Id. ¶ 20 - i. Additional meetings were held through May and June, informing the public and soliciting feedback. Id. ¶ 20- j through 20 - p. On June 20, 2005, the Alaska State Food and Agricultural Council approved the plan and sent a letter to the National Council requesting approval of the plan. Id. ¶ 20-p. On August 27, 2005, the Chairman of the National Food and Agriculture Council approved the consolidation plan. Id. ¶¶ 20-v, 26, Exhibit E. At that time, FSA could have closed the offices without any additional public comment, but the agency felt it was prudent to continue to allow comment on the plan on where the consolidated offices would be located. Id. ¶ 26.

After passage of Public Law 109-97 on November 10, 2005, additional statewide

---

[2] The FSA State Committee consists of three Presidentially appointed members and exercises co-equal responsibilities with the State Executive Director. In addition to the state committee and state executive director, there is a parallel structure at the local level – a county office and a county committee.

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB					5

meetings were scheduled and held in Wasilla (November 4, 2005), Homer (November 17), Fairbanks (November 30), and Delta Junction (December 1). Id. ¶¶ 20-dd through 20-oo. The Secretary of Agriculture then informed Congress on December 9, 2005 of the proposed closure of the Homer office. Id. at Exhibit G. On January 17, 2006, approval was received from the Deputy Administrator for Field Operations of the Farm Service Agency to proceed with the consolidation plans. Id. at Exhibit H.

The State Committee met on January 19, 2006, to finalize the placement of the consolidated offices. Id. ¶ 20-ss. Based on the public comment from all four meetings, in which objections to "urbanizing" the agency by moving offices to Anchorage and Fairbanks were heard, the State Committee voted unanimously to locate the consolidated Fairbanks and Delta Junction office in Delta Junction and to locate the consolidated Palmer and Homer office with the State Office in Palmer. Id. ¶¶ 20-ss, 29-30. The State Committee allowed for additional public comment, and affirmed its decision on January 30, 2006. Id. Notification was sent out on January 31, 2006. Id.

The present action was filed on April 28, 2006. Plaintiff served its motion for injunctive relief on defendants on May 10, 2006. Plaintiff alleges that this Court has jurisdiction over its claims pursuant to 28 U.SC. §§ 1331, 2201 & 2202, and Pub. L. 109-97.

## ARGUMENT

### I. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE IT LACKS JURISDICTION TO CONSIDER THEM.

It is well-settled that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206,

212 (1983) (citations omitted). A suit against an executive department of the United States, or against departmental employees in their official capacities, is a suit against the United States, and is therefore subject to the defense of sovereign immunity. State of Hawaii v. Gordon, 373 U.S. 57, 58 (1963), FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). The bar of sovereign immunity applies even when purely equitable relief is sought. Beale v. Blount, 461 F.2d 1133, 1137 (5th Cir.1972); Jaffee v. United States, 592 F.2d 712, 717 n.10 (3d Cir. 1979) (citing Malone v. Bowdoin, 369 U.S. 643, 648 (1962)).

"The principle of sovereign immunity protects the federal government from suit except as that immunity is waived." Pena v. United States, 157 F.3d 984, 986 (5th Cir. 1998). Such waiver may not be implied, but "must be unequivocally expressed in statutory text." Lane v. Pena, 518 U.S. 187, 192 (1996). Furthermore, any such waiver "will be strictly construed . . . in favor of the sovereign." Id. In the absence of a waiver of sovereign immunity, a district court lacks jurisdiction over claims against the United States. Mitchell, 463 U.S. at 212; United States v. Testan, 424 U.S. 392, 399 (1976); Koehler v. United States, 153 F.3d 263, 267 (5th Cir. 1998) ("At its core, sovereign immunity deprives the courts of jurisdiction irrespective of the merits of the underlying claim.").

In this case, plaintiff sues USDA and the FSA, and Secretary of Agriculture and the Alaska State Director of the FSA in their official capacities, and seeks equitable and declaratory relief against all the defendants. For the Court to entertain this suit against these federal defendants, then, plaintiff must point to some explicit language in the text of a statute that expressly and unequivocally waives the United States' sovereign immunity. Plaintiff has failed to do so.

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB						7

### A. Plaintiff Has Not Identified A Waiver Of Sovereign Immunity That Encompasses Its Claims.

None of the statutes cited in the complaint waives the United States' sovereign immunity. First, 28 U.S.C. § 1331 establishes federal question jurisdiction, and it contains no waiver of sovereign immunity. See, e.g., Pit River Home and Agr. Co-op Ass'n v. United States, 30 F.3d 1088, 1098 n.5 (9th Cir. 1994); Beale v. Blount, 461 F.2d 1133, 1138 (5th Cir. 1972); Royer v. I.N.S., 730 F. Supp. 588, 590 (S.D.N.Y. 1990); B. R. MacKay & Sons, Inc. v. United States, 633 F. Supp. 1290, 1295 (D. Utah 1986); Byrd v. Smith, 693 F. Supp. 1199, 1201 (D.D.C. 1986). Second, 28 U.S.C. § 2201 allows for declaratory judgments; it does not confer jurisdiction, nor does it contain a waiver of sovereign immunity. See, e.g., Staacke v. Secretary of Labor, 841 F.2d 278, 280 (9th Cir. 1988); Amalgamated Sugar Co. v. Bergland, 664 F.2d 818, 822 (10th Cir. 1981) ("It is settled that 28 U.S.C. § 2201 does not confer jurisdiction on a federal court where none otherwise exists."); Ballistrieri v. United States, 303 F.2d 617, 619 (7th Cir. 1962) (holding that the Declaratory Judgment Act does not waive sovereign immunity). Third, Pub. L. 109-97 says nothing whatsoever about suits against the United States, its departments, agencies, or officials.

### B. The APA's Waiver Of Sovereign Immunity Does Not Apply In This Case.

Plaintiff's failure to identify a valid waiver of sovereign immunity in its complaint should result in the automatic dismissal of this action. See Weaver v. United States, 98 F.3d 518, 520 (10th Cir. 1996) ("[Plaintiff's] pleadings offer no grounds for finding an express waiver of immunity over any of the claims in question and, therefore, no proper grounds for jurisdiction in federal court."). Nonetheless, although the complaint does not mention it, and plaintiff, in fact, disavows reliance on the APA in its memorandum, see Memorandum at 16-17, the APA waives

the United States' sovereign immunity for certain types of claims against the United States for declaratory and injunctive relief. 5 U.S.C. § 702. But that waiver of sovereign immunity cannot help plaintiff because it challenges a decision that is "committed to agency discretion by law." 5 U.S.C. § 701(a).

It would be difficult to conceive of a more clear example of a matter committed to agency discretion by law than the closing of county offices under Pub. L. 109-97. The act imposes purely procedural obligations on USDA before it may close a county office. Pub. L. 109-97 requires only that: (1) within 30 days of its decision to propose the closure of a county or local office, USDA hold a public meeting about the proposed closure in any county where the office it proposes to close is located; and (2) that USDA provide notice to specified members and committees of Congress not later than 120 days before the date the proposed closure is approved. See Pub. L. 109-97. The provision does not mandate what must be included in the notice it requires, other than the fact of the proposed closure, what matters must be discussed at the public meeting, or the duration of any such meeting. In other words, Pub. L. 109-97 leaves it entirely up to the Secretary, in the exercise of his discretion, to determine whether an FSA county office should be closed.

Plaintiff does not allege that defendants failed to comply with Pub.L. 109-97's notice and meeting requirements. Instead, plaintiff's complaint is simply that it disagrees with the Secretary's decision about how best to allocate the FSA's resources in Alaska. The Supreme Court has found such agency resource allocation determinations (and determinations that rest on discretionary resource allocations) committed to agency discretion by law. See, e.g., Lincoln v.

Vigil, 508 U.S. 182 (1993) (Indian Health Service decision to terminate a particular Indian children's health program based on resource constraints held committed to agency discretion by law; "Like the decision against instituting enforcement proceedings, . . . an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources to fund a program 'at all.'" (quoting Heckler v. Chaney, 470 U.S. 821 (1984)). And because that decision is one the Congress committed to the Secretary's discretion by law, it falls outside the APA's waiver of sovereign immunity and this Court lacks jurisdiction to consider plaintiff's challenge to it.

In sum, neither the statutes on which plaintiff relies, nor the APA, waives the United States's sovereign immunity. This action therefore should be dismissed.

## II. PLAINTIFF WOULD NOT BE ENTITLED TO A TRO OR PRELIMINARY INJUNCTION EVEN IF THE COURT HAD JURISDICTION TO CONSIDER PLAINTIFF'S CLAIMS

"To obtain a preliminary injunction, the moving party must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tip sharply in its favor." Big Country Foods v. Board of Education of Anchorage S.D., 868 F.2d 1058 (9th Cir. 1989). These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Id. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury,

irrespective of the magnitude of the injury. Id. Also, under either formulation, the moving party must make at least a minimal showing on the merits. Los Angeles Memorial Coliseum Comm. v. National Football League, 634 F.2d 1197, 1203 (9th Cir. 1980).

Under the second test, an applicant for preliminary injunctive relief raises a serious question on the merits if the claim poses a substantial, difficult and doubtful question that constitutes a fair ground for litigation. Glider v. PGA, 936 F.2d 417 (9th Cir. 1991). At a minimum, the applicant must show a fair chance of success on the merits. National Wildlife Fed'n. v. Coston, 773 F.2d 1513, 1517 (9th Cir.1985). As we now explain, plaintiff is not eligible for a PI or TRO under either test.

First, plaintiff cannot succeed on the merits of its claims. As an initial matter, because the Court does not have jurisdiction over plaintiff's claims, there is no claim on which plaintiff can succeed. For that reason alone, plaintiff cannot establish a likelihood of success on the merits.

But even without regard to its jurisdictional defects, nothing in the complaint or plaintiff's memorandum in support of its motion for emergency relief demonstrates that plaintiff has a reasonable chance of prevailing on its claims that the closing of the Homer office runs afoul of the terms of Pub. L. 109-97. We noted earlier that defendants complied with the act's notice and meeting requirements. Plaintiff does not dispute that. Instead, plaintiff asserts repeatedly in its complaint and in the memorandum in support of its motion for emergency relief that Pub. L. 109-97 does not permit the closure of a county office "unless a rigorous analysis proves such action to be cost-effective." Compl. ¶¶ 6, 7, 34, 43; Pl. Mem. at 8-9. But plaintiff does not actually contend that that requirement is imposed by the actual terms of Pub. L. 109-97, nor could it. Instead, that language comes from a Congressional Research Service ("CRS") report's

characterization of a House report that does not reflect the operative language of Pub. L. 109-97. See Compl. Ex. 2 at 6. In fact, the House report was not consistent with the Senate version of the proposal that became Pub. L. 109-97. Id. More to the point, in describing the language of the provision as actually enacted, the CRS report states that the provision simply "prohibit[s] the use of salaries and expenses to close any county office unless the Secretary notifies Congress and holds public meetings in the effected counties." Id. As we have noted before, plaintiff does not contend that defendants did not provide the notice, or hold the meeting, that the statute requires.

At bottom, defendants did exactly what the statute requires, not what plaintiff wishes it required. In these circumstances, plaintiff could not succeed on the merits of its claims that defendants violated Pub. L. 109-97 even if the Court had jurisdiction to consider them.

Second, plaintiff has failed to establish that it or its members face irreparable injury in the absence of emergency injunctive relief. Plaintiff's assertion that closure of the Homer office will harm its members completely ignores the fact that FSA's plan is not to require the producer to come to the FSA office, but rather to bring more FSA services to the producer with a circuit rider program in which FSA employees conduct visits to communities and to individual farms throughout the state. Padgett Declaration ¶¶ 7, 39. In this manner, FSA expects to greatly expand its services, as employees will not be tied to an office but will have the ability to serve producers or customers at their places of business. Id. ¶ 39. Thus, plaintiff's alleged harm of its members being forced to endure lengthy travel to obtain FSA services is not likely to materialize. There will also be a toll free number for producers to contact FSA. Id. ¶ 35. This improvement in the delivery of services is made possible by closing the office in Homer that costs almost $140,000 to operate annually and that only served 8 participants in FY 2005, who received $44,332.00 in

assistance, id. ¶ 12, and which so far in FY 2006 has served only one participant who has received $566.00, id. ¶ 31.

In addition, the hardships that would be involved if the consolidation plan were stayed would be borne entirely by defendants. The FSA office in Homer is located in leased space; notice has been given to the lessor, and the lease expires on May 31, 2006. Padgett Declaration ¶ 37. The FSA employee in Homer has resigned effective May 27, 2006. Id. The aerial maps, photography, and farm records, excluding current year operating files, were all transferred to Palmer before this lawsuit was even filed. Id. ¶ 38. If the Court were to order the Homer office to stay open past June 1, FSA would have to secure a new lease under an economically disadvantaged bargaining position and would be forced to send an employee to Homer on temporary duty.

Finally, the public interest would not be served by a TRO or PI preventing defendants from closing the Homer office. Congress left it entirely up to defendants to decide whether to close a particular county office, so long as they hold a public meeting in the affected county shortly after proposing the closure and then notify Congress that the office closing has been proposed. In other words, Congress believes that defendants are in the best position to know how to advance the pubic interest insofar as the location of local and county FSA offices is concerned. If USDA customers are permitted to second guess each of those decisions, the program of consolidation that defendants are implementing will be entirely thwarted.

## CONCLUSION

Because the United States has not expressly and unequivocally waived its sovereign immunity from suit under the applicable statutes and because plaintiff failed to state a claim under

them, this Court should dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) or (6), and, in any event, should deny plaintiff's motion for a temporary restraining order and a preliminary injunction.

Dated: May 22, 2006                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DEBORAH M. SMITH
Acting United States Attorney

MICHAEL SITCOV
Assistant Director

 /s/ Richard L. Pomeroy & Edward H. White
RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-2344
Email: richard.pomeroy@usdoj.gov

EDWARD H. WHITE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm. 6110
Washington, D.C. 20530
Tel: (202) 514-5108
Fax: (202) 318-4268
Email: ned.white@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2006, a copy of the foregoing OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND CROSS MOTION TO DISMISS was served electronically on
George T. Freeman.


s/ Richard L. Pomeroy

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB                                15