DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENAI PENINSULA CHAPTER - <br> ALASKA FARM BUREAU, INC. <br><br>                   Plaintiff, <br><br>      v. <br><br> MIKE JOHANNS, in his official capacity <br> as the Secretary of the United States Department <br> of Agriculture, UNITED STATES DEPARTMENT <br> OF AGRICULTURE, FARM SERVICE AGENCY, <br> an agency of the United States Department of <br> Agriculture, ALASKA FARM SERVICE <br> AGENCY, and administrative Division of the Farm <br> Service Agency, and CHAD PADGETT, in official <br> Capacity as the State Executive Director of the <br> Alaska Farm Service Agency <br><br>                   Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 3:06-CV-00098 RRB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF CHAD B. PADGETT**

Pursuant to 28 U.S.C. 1746, Chad B. Padgett declares and states:

1.      I am the State Executive Director (SED) of the USDA Alaska Farm Service

Agency (FSA).  I have held that position since April 16, 2001.  My responsibilities include

directing and administering all FSA programs in the state; managing all aspects of State Office day-to-day operations; staffing and distribution of staff; FSA employees within the State; representing the President, Secretary, and Administrator in Federal FSA programs.  I make the statements in this declaration based on personal knowledge and Farm Service Agency policies and procedures.

2.     Prior to the consolidation of "County" offices under the Alaska restructure plan, the FSA office located in the town of Homer served the following Alaska boroughs and Regional Education Assistance Areas (REAAs):  Aleutians East Borough, Bristol Bay Borough, Kenai Peninsula Borough, Kodiak Island Borough, Lake and Peninsula Borough, Northwest Arctic Borough, Bering Strait REAA, Lower Kuskokwim REAA, Lower Yukon REAA, Yupiit (Akiachak, Akiak, Tuluksak) REAA, Kashuanamuit (Chevak) REAA, Pribolof Islands REAA, and the Aleutian Region REAA (see attached map for boundaries).

3.     Due to the geographic area served, FSA employees must travel to areas off the road system to service customers / producers no matter where offices are located.  It would be unrealistic to expect that customers / producers from areas off the road system would travel to the office in Homer to obtain service due to the producer expense involved.  Therefore, the very premise of the restructure held that FSA employees would travel to communities and farms to service producers rather than any expectations that customers would come into the office unless they are in close proximity.  The restructure calls for a circuit rider program where customers / producers are visited in communities and on the farm by FSA employees.  Thus, reducing the cost to the customer / producer in expecting them to come to an office and creating efficiencies in administering offices.

4.      The plan was developed out of a comprehensive review and thorough analysis of State and County FSA operations in Alaska.  See Exhibit 1, Alaska Farm Service Agency Reorganization Plan FY 2005.  That analysis was conducted over a two year period and several months of intensive review of operations using data from the previous 5 years.  The data used were program activity reports by the County offices broken down by program area, phone and correspondence logs, outreach activity by the offices paired with response to those activities, administrative expenditures for delivery of programs, compliance reports, workload reports, past, current, and future program availability, and review of stakeholder interests.  See Exhibit 1, Alaska Farm Service Agency Reorganization Plan FY 05.

5.      The review found that programs available to Alaska agricultural producers are very limited due to the types of crops grown, program eligibility requirements, and interest by producers in participating in FSA programs.

6.      Programs currently offered by FSA do not fit producer needs in Alaska either because of the types of crops being grown, program limitations or ineligibility due to legal requirements.

7.      Under the restructure of offices, the service is much improved through a circuit rider program where employees conduct on the farm and community visits, the plan also allows for greater efficiencies in administrative areas such as reductions in rent, utilities, equipment (copiers faxes, etc.) computer systems, reports, telephone systems, etc.  Instead of having two of each of the above items, the office will be able to consolidate usage with sister agencies and there will no longer be a need for so much duplication of effort and equipment.

8.      In determining the most efficient delivery system to fit Alaska, I formed a task force to assist in making recommendations for efficiencies (not strictly tied to budgetary

concerns) and providing better service to producers.  The task force reviewed a number of existing FSA procedures and policies as well as program participants, program payouts, and office activities.  The task force was directed to review outreach activities and analyze potential effects to stakeholder groups.  Exhibit 1.

9.     The task force and the Alaska State Committee conducted a very thorough analysis of County Office operations.  Most importantly, after breaking down actual participation, we found that in 2005, there were 14 participants in FSA programs in entire Homer County Service Area.  Six of those participants were enrolled in the Grasslands Reserve Program (GRP), jointly administered by the Farm Service Agency and USDA Natural Resources Conservation Service (NRCS), a program currently not funded.  NRCS is the technical agency working with the participant to establish a GRP contract while FSA makes the payment based upon information provided by NRCS.  Those payments can be made from any FSA office and NRCS can transmit information to FSA.  Seven of the participants listed were enrolled in Continuous Signup of the Conservation Reserve Program (CRP) which provides for riparian buffers and wildlife habitat improvement on the farm.  Of those 7, only 3 resided on the Kenai Peninsula with 4 residing off the road system. One payment was made in the Loan Deficiency Payment Program.  That application was also off the road system.

10.     An additional program that FSA administered during the period that the task force was reviewing state wide operations was the Trade Adjustment Assistance Program for Commercial Salmon fishermen (TAA).  While there were almost 700 participants listed in TAA, these numbers were excluded as those participants would no longer qualify for coverage in CY 2005 and FSA administered the program on behalf of the Foreign Agricultural Service (FAS) as a temporary program.  Visits were made to Southern areas by State Office staff in Palmer and

County Office staff from Fairbanks to assist the Southern area in signing up fishermen. Long range projections showed that commercial salmon fishermen would not qualify for benefits in FY2006 or FY2007 because of increases in prices averaged over a 5 year period in accordance with the law. FY 2007 is the termination of the law allowing for coverage of commercially caught salmon and there are no other programs available to fishermen through FSA.

11.     The participation numbers were compared with other County Offices in State and the performance of the State Office in administering the TAA program during FY2004. The Alaska State Office located in Palmer served 4,364 fishermen for a total payout of $5,183,480.00. This was accomplished by using a circuit rider program to deliver services in communities and conducting all administrative actions for applications in the State Office located in Palmer. This system was found highly successful as employees located in the field (circuit riders) were able to focus on applicants and their needs, while office needs and administrative work were conducted off sight (consolidated to the State Office). County Office Committees (COC) and County Office staff requested that the State Office run the program. The State Office obliged so as not to create a derogatory effect upon agricultural producers. This signup would have been a County office responsibility but the State Office circuit rider program proved highly successful.

12.     For strictly FSA programs requiring interaction with FSA offices or employees for Homer in FY2005, FSA had 8 participants. The cost of delivery to those 8 participants was $124,198.00. This amount excludes $15,000.00 in rent paid by NRCS for the year. FSA now pays that bill. Participants received a total of $44,332.00. Thus, it is more efficient to cut administrative costs and time to deliver services.

13.    The National Agricultural Statistics Service 2002 Census of Agriculture reports that there are 610 farms statewide with a reported acreage of 98,131.  Of that figure, acres harvested were 31,824 with 8,917 acres pastured; 48,851 acres were idle cropland or used for cover crops, 3,821 acres were cropland in which all crops failed, and 4,718 acres were in summer fallow.  The total value of all crops sold was $20,543,000.  Of that figure, 61.7% were nursery crops, 19.6% were vegetable crops, and all other crops made up 18.7%.  The value of Livestock, Poultry and Their Products Sold were $25,600,000.  Of that figure, 81.3% was aquaculture, 12.7% was milk and dairy products from cows, 3% cattle and calves, .1% sheep, .4% poultry and eggs, .4% horses, .8% hogs and pigs, 1.3% all other animals and products.

14.    On the entire Kenai Peninsula, NASS reports 141 farms broken down as follows:

| | |
|---|---|
| Cattle and Calf Farms | 24 Total Farms |
| 1-9 Animals | 13 |
| 10-19 Animals | 5 |
| 20-49 Animals | 2 |
| 50-99 Animals | 3 |
| 100-199 Animals | 1 |
| | |
| Hogs | 7 Total Farms |
| 1-24 Animals | 5 |
| 25-49 Animals | 2 |
| | |
| Poultry | 18 Total Farms |
| 1-49 Animals | 16 |
| 50-99 Animals | 1 |
| | |
| Sheep | 11 Total Farms |
| 1-24 Animals | all |
| | |
| Aquaculture | 14 Farms |
| | |
| Miscellaneous Livestock | 13 Farms |
| | |
| Potato | 4 Farms = 4 Acres |
| | |
| Hay | 53 Farms = 2,643 Acres |

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB

| | |
|---|---|
| Vegetable | 4 Farms = 1 acre |
| Orchard | 1 Farm (No reported acreage) |
| Nursery | 14 Farms (Reported in sq. footage) |

15.     The Farm Service agency programs are based upon the acreage of a farm, the type of production, and in some cases the yield and rate of the commodity grown.  With small acreages, the payments are often very small.  Additionally, livestock payments are made only in disaster situations.  Therefore, programs that do fit producers are not always utilized because the payment is not enough to warrant application.  If all farms on the Kenai Peninsula as listed by NASS were included as participants in FSA programs, the office would still only be considered as a small and most likely 1 person office.

16.     The guiding FSA procedure for the task force, County Office Committee (COC), State Committee (STC), State Food and Agricultural Council (SFAC), National Food and Agricultural Council (NFAC), Deputy Administrator for Field Operations (DAFO), FSA Administrator, and Secretary of Agriculture was to review the handbook references outlined below paired with data as described above.

17.     The sources of authority for State and County FSA Committees and State and County Office staffs are [Cite CFR and PUBLIC LAW]:

    a.     The Soil Conservation and Domestic Allotment Act of 1938

    b.     The Consolidated Farm and Rural Development Act

    c.     The Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994.

FSA procedure found in Handbook 16-AO (Rev. 3) Amend 1, paragraph 94, Combining and Decombining County Offices states:  "Combining County Offices may be authorized if

either of the following applies:  1) There are only a few participating farms or farmers in the

county; 2) Operation of separate County Offices is uneconomical."  The Handbook further states:

"Combinations or decombinations of County Offices shall be recommended or endorsed by: 1)

County Office Committee (COC); 2) State Committee, (STC); 3) Deputy Administrator for Field

Operations (DAFO); 4) National Food and Agricultural Council (NFAC); Note:  Disagreement

by any of the parties does not impede the Secretary or Administrator from combining or

decombining County Offices."  There is no mention of any public meetings as COC members are

elected to represent their Local Administrative Area (LAA) producers to the Agency.  STC

members are appointed and meetings of the COC or STC are always open to the public unless

they are in Executive Session.  Therefore, members of the public were able to attend any of these

meetings and did in very limited numbers.  Exhibit B.

18.    Handbook 16-AO (Rev. 3) Amend 1, paragraph 94D Mandate or Veto states:

"The Secretary of Agriculture or the Administrator, if designated, has the authority to mandate or

veto combining or decombining County Offices.  Combinations or decombinations shall be

submitted to NFAC.  Paragraph 94E states:  When County Offices are combined or decombined

State Offices shall:  1)  Record the effective date and pertinent information about the decision to

combine or decombine County Offices; 2)  Provide a copy of the record to each affected County

Office and County Office Committee (COC).  Note: If action results in the termination of or

combination of COCs, see paragraph 95.

19.    Handbook 16-AO (Rev. 3) Amend 1, paragraph 95 Terminating or Combining

COCs states:  STC may not terminate COC or consolidate two or more COC's unless STC: 1)

Requests and DAFO approves of this action; 2) Notifies COC's involved of the proposed

actions; 3) Approves of this action in a vote taken after the end of the 60-calendar-day period

from the date the COC received the notification. Exhibit C.

20. The Alaska FSA restructure plan began prior to the enactment of Public Law 109-

97 and was based upon the procedures contained within Handbook 16-AO as referenced above.

Below is a timeline of the actions taken prior to, during, and after enactment of PL 109-97.

a. August 2004 – All State Executive Directors are informed that budgets in

2005 will be funded at levels far below FY2004.

b. October 2004 – All staff in Alaska are informed that the State Office and

SED will be reviewing activity levels to seek efficiencies in the agency statewide.

Included in the conversation is that the possibility of office closures and consolidations

could be a reality.

c. November 2004 - A task force including a County Executive Director,

State Committee Chair, State Executive Director, Administrative Officer, and Program

Manager reviews County operations over a three day period based upon program

participation and expenditures.

d. December 2004 - Task force plan and request to move forward on the

process (including County Office Committee input) is submitted to the Deputy

Administrator for Field Operations (DAFO) and the FSA Administrator. The plan was

put on hold pending a national restructure rollout (FSA Tomorrow).

e. Feb. / March 2005    State Executive Director informs Congressional

Delegation and State Legislators / Governors office of plans to consolidate. In person

meetings held in trips to Anchorage, Juneau, and Washington D.C.

f.      March 2005 -  Administrator and Deputy Administrator for Field Operations allow State Executive Director to announce the plan to the entire State Committee and begin the process.

g.      April 15, 2005 – State Executive Director proposed the restructure plan to the State Committee including all options (expansion to outright closure of all offices) and the thorough analysis of program participants vs. costs and delivery via circuit rider. The State Committee UNANIMOUSLY voted that operation of separate offices in Homer and Wasilla was uneconomical and that there were few producers participating in FSA programs.  The State Committee voted the same for the Delta and Fairbanks offices in the North.  Exhibit D.

h.      May 2 and 3, 2005      Further discussion / clarification of State Executive Director  Proposal on AK Restructure during State Committee meetings;  These meetings focused on additional analysis and the procedural responsibility and requirements of the State and County Committees.

i.      May 6, 2005   The Alaska State Food and Agricultural Council (SFAC) met on restructure of Farm Service Agency offices in Alaska.  No vote was taken but members were informed of the plan and that the Farm Service Agency would be seeking public input on the plan through the County Office Committee and County Executive Directors.  I asked for input from SFAC membership including Cooperative Extension Service, Alaska Division of Agriculture, Natural Resources Conservation Service, Forest Service, and Rural Development.

j.      May 12 and 13, 2005 - State Committee Meeting was held in joint session with County Office Committee Chairs and County Executive Directors from Homer and

Palmer Counties on restructure. The State Executive Director's proposal was outlined via power point presentation and County Committees were asked to provide input from their area on the plan and propose alternatives if they believed necessary.

      k.    May 19, 2005 - State Executive Director met with Alaska Farmers Union President on the restructure plan to inform his membership and get feedback. COCs responded to the request and provided their comment to the STC.

      l.    June 7, 2005 - State Committee / County Committee Chair / County Executive Director meeting on restructure (Fairbanks County). All were asked for input on the plan. State Committee reaffirmed vote on restructure (2-1).

      m.    June 8, 2005 - State Committee / County Committee Chair / County Executive Director meeting on restructure (Delta County). All were asked for input on the plan.

      n.    June 10, 2005 - E-mail to Alaska Farm Bureau requesting to meet with membership and to provide information about restructure – response was to wait until November Annual meeting, otherwise no interest.

      o.    June 17, 2005 - Public meeting in Homer with reps from AACD (Alaska Association of Conservation Districts, Homer Soil and Water Conservation District, Kenai SWCD, Kenai Farm Bureau, Farmers Union, Homer County Committee, Homer County Executive Director, Homer Farm Bureau, State Rep Paul Seaton and State Senator Gary Stevens, Press availability but no reporters came to the meeting.

      p.    June 20, 2005 - State Food and Agricultural Council met again. Plan was approved in accordance with State Food and Agricultural Council procedures. A letter

confirming the vote was signed and request for approval was forwarded to the National

Food and Agricultural Council.  Public comments were provided prior to the vote.

      q.       June 22, 2005 - State Executive Director conducted a conference call with

County Committees and staff on restructure.  The intent was to clarify procedures and to

inform them that the SFAC had approved the plan.

      r.       June 30, 2005 - Homer news ran an article on FSA Restructure in Alaska

informing the public of the plan.

      s.       August 16, 2005 - State Food and Agricultural Council met on Farm

Forum updates and restructure process.

      t.       August 17, 2005 - Anchorage Daily News ran an article on Alaska

Restructure.

      u.       August 25, 2005 - Alaska Farm Bill Forum (Deputy Secretary Conner in

attendance) – Comment made on Alaska Restructure, posted to National USDA website

and included in Nationwide Farm Bill Forum transcripts.

      v.       August 27, 2005 – National Food and Agricultural Council Chairman

sends letter to State Food and Agricultural Chairman approving the consolidation of FSA

offices in Alaska.  Exhibit E.

      w.       August 2005 - August issue of Farm Bureau Newsletter announces

restructure.

      x.       September 2005 - September issue of Farm Bureau Newsletter makes

corrections to original article and includes letters to the editor on restructure.

      y.       September 23, 2005 - Farm Service Agency State Executive Directors are

called to a National meeting to announce FSA Tomorrow initiative.  FSA Tomorrow was

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB
          12

a plan to consolidate FSA offices nationwide.  Alaska excluded from FSA tomorrow plan and was clearly not a part of any of the proceedings.

   z.   September 28, 2005 -  County Conference call on restructure to clarify procedures and insure that all Committees and employees understood the process.

   aa.  October 2005 - Farm Bureau Newsletter contains comments / letters to editor on restructure.

   bb.  October 17, 2005 - FSA Tomorrow plan is declared dead by FSA national office.

   cc.  October 26, 2005 - STC Meeting in Delta Junction (included restructure).

   dd.  October 28, 2005 - Press releases issued for Public meetings statewide on restructure announcing dates, times, and places for public hearings on restructure to comply with Appropriation Bill language on Farm Service Agency office closures.

   ee.  October 31, 2005 - District Meeting – Discussion on Restructure with county employees.

   ff.  November 2005 - Farm Bureau Newsletter – Comments about restructure.

   gg.  November 3, 2005 - Homer News announces public meetings on restructure November 17, 2005.

   hh.  November 4, 2005 - AK Farmers Union Annual meeting in Wasilla – State Executive Director spoke on restructure and received comments on the plan.

   ii.  November 10, 2005 - Homer news announces public meetings again.

   jj.  November 10, 2005 - AK FSA Public meeting on restructure.  Information provided and comments made by producers – Wasilla.

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB

kk.    November 11 and12, 2005 - AK Farm Bureau Annual meeting in Wasilla – no presentation was made but I was available for questions and comments.  The Farm Bureau did not allow time for me to speak or take comment about the plan.

ll.    November 17, 2005 - AK FSA Public meeting on restructure.  Information provided and comments made by producers and public – Homer;  Exhibit F (Minutes of Homer meeting).

mm.    November 30, 2005 - AK FSA Public meeting on restructure. Information provided and comments made by producers and the public – Fairbanks.

nn.    December 1, 2005 - AK FSA Public meeting on restructure.  Information provided and comments made by producers and the public – Delta.

oo.    December 2005 - Farm Bureau newsletter contains comments about restructure.

pp.    December 9, 2005 -   Secretary of Agriculture, Mike Johanns sends communication to Congress on the Alaska restructure informing Congress of plans to consolidate.  Exhibit G.  Because of Congressional Language in Appropriations, 120 day timeline begins.  Offices cannot be closed until after April 9, 2006.

qq.    December 22, 2005 - Homer News and Homer Tribune articles on restructure.

rr.    January 17, 2006 - Deputy Administrator for Field Operations sends letter to State Executive Director approval the plan and allowing for the office to move forward with restructure.  Exhibit H.

ss.    January 19, 2006 - State Committee meeting with input from public via teleconference is held to finalize placement of consolidated offices.  The combined

Homer and Wasilla offices will be moved to Palmer rather than Anchorage, the combined

Fairbanks and Delta offices will be moved to Delta based upon public input –

UNANIMOUS decision by the State Committee.  Because of changes, the State

Committee allowed for additional public input until January 30, 2006.  At that time, the

STC would entertain a motion to reconsider the decision.

tt.     January 30, 2006 - January 19th decision of the State Committee is

upheld, motion to reconsider is not entertained after review of comments.

uu.     January 31, 2006 - State Executive Director issues letter to County offices

and Committees informing them of the decision.  The letter notified County Offices and

Committees that consolidated offices will be closed June 1, 2006.

vv.     February 15, 2006 - Palmer and Homer County Committees are scheduled

to meet to select a County Executive Director and define Local Administrative Areas for

purposes of representation on the consolidated County Office Committee.  The Homer

Committee boycotted the meeting as of February 14th and failed to appear.

ww.     February 16, 2006 - Because the Homer County Committee failed to

appear, the State Committee selected the County Executive Director and Palmer County

Committee drew Local Administrative Area Boundaries.

xx.     February 22, 2006 - State Executive Director issues letter to the selected

and non-selected County Executive Directors informing them of their rights and

employment status.

yy.     March 7, 2006 – Homer CED, only employee in the office declines

selection as Southern Office CED located in Palmer and will separate on May 27th.

zz.     March 18, 2006 – Palmer CED, only employee in the office retires.

21.    The plaintiff alleges that I proposed the original restructuring plan to the State Committee on May 12, 2005.  The original restructuring plan was originally proposed to the State Committee and voted on April 15, 2005 during public session.  A full written explanation of the plan was provided to all State Committee members with full justifications for the proposal. The State Committee UNANIMOUSLY voted that operation of separate offices in Homer and Wasilla was uneconomical; and that there were few producers participating in FSA programs in both offices.  The State Committee voted the same for the Delta and Fairbanks offices in the North.  The STC readdressed the issue in meetings May 2nd and 3rd then again in a joint session with County Committee Chairmen from Homer and Palmer on May 12, 2005 also during public session.  The STC and I made it clear during that meeting that office locations were not determined and that proposed locations were not decided.  However, the decision had been made to combine the respective County Committees and Offices due to the lack in participation.

22.    The original recommendations called for closing the Homer and Palmer County FSA offices and locating them in Anchorage.  In addition, it called for combining the Delta and Fairbanks County FSA Offices into one office at Fairbanks with a sub-office at Delta Junction that would be serviced by Fairbanks.  These locations were chosen because they were located near transportation hubs.  I instructed employees in the South not to discuss the restructure plan until all employees and committees could be notified per State Committee wishes.  At that time, the State Committee felt it was imperative to meet with County Committee Chairman and all employees to talk about the proposed plan so they did not hear about it from a third party and would be able to ask questions directly of management.  It was also important that employees were notified of the plan and received instructions and rights as granted by the agency under terms of their employment.  The instruction not to discuss the plan were for a very short period

lasting from May 13th until June 8th when the Northern County Offices and Committees met with the State Committee and all employees had been notified.  Additionally, the Committees were asked to provide feedback to the State Committee on the proposed plan as outlined during a power point presentation at the meeting.  The State Committee asked for factual input to refute that there were more participating producers and it was economical to operate separate offices. The Homer COC did not provide any evidence of harm to the producers or an alternative other than status quo.

23.     The plaintiff alleges that I did not publicly announce the original restructuring plan until June 17th during a regular meeting of the Kenai Peninsula Chapter of the Alaska Farm Bureau.  The plan was publicly announced April 15th as the State Committee session was open to the public, although no members of the public were in attendance.  On June 17th, STC member Bruce Willard called informing me that a meeting was taking place that evening.  I requested to attend to explain the details of the plan as Mr. Willard was also a Director of the Farm Bureau.  He agreed and I flew to Homer carrying copies of the plan, full justifications, participant numbers, and a printed copy of the Power-Point presentation used during State Committee meetings.  All information pertinent to the consolidations and closures was contained within the documentation I provided at the meeting.  In attendance, were County Committee members, Jim VanOss, Abby Ala, State Committee member Bruce Willard, Mark Marrette, President of the Kenai Peninsula Chapter of the Alaska Farm Bureau, Tommy Stephens, FSA County Executive Director, as well as other members of the Chapter.  During the meeting I explained the steps in the process.  As part of those steps, I explained that the State Food and Agricultural Committee (SFAC) would be meeting on the plan.  When asked if comment could be submitted, I explained that it could.  At the time of the June 17th meeting, the State FAC had

not scheduled a meeting.  Upon returning to the office on June 20th, the FAC met.  It was not an

emergency meeting, however, it was called as the Directors of Rural Development and Natural

Resources Conservation Service would be unable to meet for several weeks if it were delayed.  I

did not fail to inform the Kenai Chapter of the Alaska Farm Bureau of the SFAC meeting

because the SFAC had no plans to meet at the time. I did inform the SFAC of the concerns raised

to that point and correspondence received.

24.     The plaintiff alleges that affected producers unanimously opposed the plan and

my underhanded tactics citing VanOss affidavit.  The Chairman of the SFAC at the time was

State Director for USDA Rural Development who is responsible for minutes of the meeting.  I do

not control those minutes and have never denied access to them, I don't have them and they

reside with the Chairman of the SFAC.  The plan was discussed in accordance to the same

information provided to the Kenai Peninsula Chapter of the Alaska Farm Bureau and was

unanimously accepted.  There is no requirement for the SFAC to accept public comment as it is

an administrative arm of the three "County-Based" USDA agencies to coordinate administrative

functions of the USDA service centers.

25.     In accordance with USDA procedure, the SFAC sent a letter to the National Food

and Agricultural Council requesting approval of the restructure plan.  In the interim,

communication from the public was received on State and National levels of the agencies and

responded to citing the appropriate justifications for the consolidations and closures.

26.     On August 27, 2005, the Chairman of the National Food and Agricultural Council

(NFAC) sent a letter to the SFAC with copies to all appropriate agency heads approving the

consolidation plan.  At that time, FSA could have closed the offices without any additional

public input and moved forward with the effort.  The agency felt it was prudent to continue

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB

allowing comment on the plan and did not immediately close offices, although it could have.  It was made clear throughout the process from start to finish that the locations of the consolidated offices would not be decided until the State Committee was approved to consolidate the County Offices and Committees.  After that letter, the offices and respective committees were officially allowed to be combined and all procedural requirements had been met.  The State Committee was well aware and informed that the offices and Committees were combined after receipt of the letter.  The next and only remaining question from that point forward was where to place the combined offices.

27.    County Committees and employees were informed by letter from me that the offices and committees were combined and the remaining question was where to place the office. In September 2005, a national consolidation plan was announced.  Alaska was not included in the plan but was held up by its announcement and subsequent withdrawal.  By October 2005, the plan was revoked.

28.    Public law 109-97 speaks only to the closure of FSA offices, not consolidations of Committees or Offices.  It does not speak to staffing of those offices only that an office cannot be closed unless the Secretary notifies Congress, approves the plan, holds a public hearing within thirty days of the notice from the approval date, and waits 120 days to close the office.  This plan with the changes has been reviewed by the appropriate Congressional Committees, the Secretary of Agriculture, the National Food and Agricultural Council, the Administrator of the Farm Service Agency, the Deputy Administrator for Field Operations, the State Food and Agricultural Council, the Alaska State Committee, the State Executive Director, and the public.  The necessary notification and coordination required with the Alaskan Congressional Delegation and with the public with all of the changes subsequent to public meetings.  The changes were made

due to the public input received and communicated appropriately.  The FSA national office and I have had almost constant contact with Congress about the closure from the inception through the changes.  At no time has Congress ever informed us that we have not met their intent.  This includes talking over the plan with the Senate Committee on Appropriations, Subcommittee on Agricultural Appropriations and all three of Alaska's Congressional Delegation.  The Agency has responded to requests for information on a regular basis from Congress and has satisfied any concerns that a thorough analysis was not complete.  Congressional offices responded to a multitude of accusations and allegations made by the plaintiffs in this case.  The agency has been upheld throughout in meeting the intent of the law by the very Congress that passed it.

29.     Changes to the plan were made only after hearing public comment from all areas of the State, not just public comment from Homer.  The plaintiff fails to inform the Court that at meetings held in Wasilla and Delta Junction, comments were made on the original plan.  Although some did not like the idea of consolidations and closures, the majority of comment received asked that if closures were occurring, the agency should headquarter the offices in Palmer and in Delta Junction, respectively.  These comments include former State Committee member, Bruce Willard.  He believed, as the representative of the Southern portion of the State that an office in Palmer was much more desirable than an office in Anchorage.  The primary reason for his statement was based upon public comment that the agency would urbanize its functions by moving to Anchorage rather and therefore, we should keep the offices located in a more agricultural area like Palmer.  Jim VanOss and the majority of our COC members from Palmer made similar comment as representatives of the two Southern areas being combined.

30.     The Palmer and Delta Junction offices have the most participation of all the offices in the State.  By keeping operations in our base areas of participation, producers feel that

they will be better served than what was proposed in the original plan.  In addition, more

efficiencies were gained by placing the Palmer and Homer County offices into the Palmer State

office.  There are now even more efficiencies through reductions in rent, equipment, furniture.

The two combined Southern offices are now located into existing FSA space where duplications

in equipment, computer systems, etc. are no longer needed.  Thus creating more budgetary

efficiencies.  State Office employees will assist the County employees so communication

between the field offices and the State offices is much more efficient.

      31.     The plaintiff maintains that FSA will not save money as travel costs to service the

Homer area will be more than any savings in rent, utilities, and salaries.  This is incorrect.  The

majority of the business needs for Homer have been outside of the immediate office area.

Through the restructure extra and multiple legs of travel will be eliminated when providing

service. The program participation reports have shown that the majority of service is to Kodiak

and the Aleutian Islands.  While travel will be conducted there is a large cost savings in having

only one person managing the offices and having two less offices to maintain.  The needs of

producers will be met.  For instance, in Fiscal Year 2006 only 1 producer has signed up for FSA

programs.  The signup was in the Loan Deficiency Payment program for Wool and Mohair.  The

person who signed up is located on the Aleutian Islands and received $566.00.  All transactions

from the application to payment were conducted remotely and through electronic means.

Payments have been made to other producers but those payments can be made from any office.

There has been no need for a visit to the area; however, outreach activities are continuous to

insure producers are aware of the availability of FSA programs.

      32.     Periodic checks for compliance on the Conservation Reserve Program are also

required.  These checks will be conducted on the farm and scheduled with the producer just as if

we had an office in the Area.  This will not change.  At this time, there are only 3 producers on the Kenai Peninsula who will need compliance checks.

33.    Plaintiffs argue that they have never been provided with an explanation of how producers will be better served.  Plaintiffs have been provided, on many occasions with how producers are better served.  FSA employees will service producers on their farm and in their community.  There is no expectation that a producer will have to come into an office.  Therefore all producers, not just a select few who live close to the office in Homer, will have an ability to work one on one with FSA staff at their place of business.  Additionally, outreach in areas that FSA staff has not regularly visited will be visited under the restructure plan because of better ability to mobilize and travel.  By having the office for the South located in Palmer, the employees are much closer to Anchorage with a better ability to fly at less expense to areas off the road system.  A government vehicle is available for areas on the road system and will result in cost savings over paying for privately owned vehicle transportation as is used now.  By pooling our resources, employees will be better equipped for providing service than ever before.

34.    Prior to the restructure, employees were required to maintain the FSA's Legacy System 36 and AS400 systems.  This required at least 30% of the employee's time per day in the office.  The employees will no longer need to complete these tasks in the offices.  Therefore, 30% of their time will be free to work with producers.

35.    Plaintiffs argue that there is possibility of irreparable injury to plaintiff if preliminary relief is not granted.  Further, the plaintiff argues it brings declatory relief on behalf of its members who participate in FSA programs.  So far, in Fiscal Year 2006, only 1 person has participated in FSA programs.  That person was located on the Aleutian Islands.  3 people are currently receiving payments from FSA in Homer.  Of those that submitted the affidavits, only

Chris Rainwater receives payment.  Bruce Willard, Victor Murculief, Mark Marrette, and Jim

VanOss do not participate in FSA programs at this time.  For the active participants, payments,

compliance checks, and any needs can easily be fulfilled from Palmer.  Producers can make

contact with our offices through a number of means and if service is needed, FSA will provide

the requested service in person.  A toll free was established under the TAA program that will be

used for the public and producers to communicate with the agency at no cost allowing for easier

communication.

     36.    In the affidavits, Mr. Rainwater proclaims that he will be unable to comply with

Highly Erodible Land and Wetland regulations in order to participate in the "EQUIP" (actually

EQIP or Environmental Quality Incentives Program) administered by the Natural Resources

Conservation Service.  The Farm Service agency does not administer EQIP. The Highly Erodible

Land and Wetlands documentation would be forwarded to FSA by NRCS and the producer

should changes occur.  Mr. Rainwater has already certified to FSA that there are no violations so

updates may be needed at a future date.  Should that occur, NRCS or Mr. Rainwater could

provide FSA the needed certifications.  If there is any needed farm records, files, or photography,

Mr. Rainwater or NRCS would have them at their disposal just as quickly as if an office were

located there through electronic means.  This situation works in many areas of the State.  For

instance, NRCS has offices in Kodiak, Dillingham, Bethel and Nome.  FSA has covered these

areas out of Homer.  So producers participating in EQIP and NRCS employees in Kodiak,

Bethel, Nome, or Dillingham already work long distance with FSA on farm records, aerial

photography maintained by FSA.  There have been no complaints that producers were not

serviced by FSA and all requests have been completed timely.  Thus, it is already proven that the

system works very well.  Any documentation FSA needs from NRCS can be easily transferred

via electronic means as is done now. Face to Face contact will be made on Mr. Rainwater's farm should he need services. This has been explained to Mr. Rainwater and the plaintiffs numerous times by USDA, FSA, and Congress in a variety of formats. There is no harm to any of the plaintiffs or the members they represent. Mostly, they do not participate in our programs.

37.     Plaintiff claims that balancing the hardship favors the plaintiff. Plaintiff explains that FSA has an existing presence in Homer such that it would not have to secure other office space. This is not correct. 120 day notification to the lessor has been given. The lease on the office expires on May 31st. FSA would have to secure a new lease at a large expense, especially under a temporary arrangement. While the office has one employee, that employee has voluntarily resigned effective May 27th. Keeping the office open past that date will require other employees to maintain the office while on travel status. This is a very expensive proposition with an indefinite closure date for very minimal return to the producer and at a huge taxpayer expense. Staffing in Palmer is adequate to cover needs but maintaining the offices in Homer, Palmer, or Fairbanks under a temporary order would be costly and not allow employees to focus on program delivery.

38.     The Homer and Palmer offices have already been combined into the Palmer State Office. Aerial maps and photography had already been collected and moved to the Palmer site before this lawsuit was filed. Farm records, excluding current year operating files have also been consolidated to the Palmer site. For all practical purposes the Agency has already consolidated the Homer and Palmer offices into the existing space in Palmer. Homer and Palmer County Offices are considered only as a delivery point until June 1st, the official closure date.

39.     Plaintiffs argue that the request for injunctive relief advances the public interest. Producers will suffer no harm under this restructure and will benefit from more services to them

than ever.  These services will be provided by the agency under the circuit rider program.  The

Agency has taken the welfare of all Alaskans into account by creating efficiencies in

Administrative delivery of program services.  Taxpayers are served by reductions in the cost of

delivery and producers are served at their place of business.  Areas not visited by FSA in the past

will now be visited and extensive outreach will be conducted.  Based upon participation reports,

the agency will greatly expand services as employees will not be tied to an office and have the

ability to serve the producer or customer at their place of business, not ours.  The restructure

allows for better representation of "underserved producers" on the COC by redrawing the

boundaries and opening the doors for their participation.  All of this at a major cost savings of

$250,000 to the taxpayer.

40.     Public input has been allowed in varying forms for over one year at this point.

The public has been provided with numerous avenues to make comment.  In addition, the public

has been provided with a complete and thorough analysis of operations.  Not only has the public

been provided ability to comment through FSA and the Departmental level of USDA, but they

have commented through Congress and received information from each level throughout the

course of the restructure effort.  The plaintiff has no cause to say the public has not been

informed or that any processes or laws have been violated.  They simply do not agree with the

agency but there is no harm to producers.

41.     The plaintiff has not shown probable success on the merits.  Plaintiff has failed to

explain why only 1 producer has signed up for FSA programs so far this year in Homer and how

that person would be affected.  The Plaintiff has never provided reasonable alternatives to the

plan or explained how producers will not be served on a factual basis.  The process used has

been upheld by the Agency, the Department of Agriculture and Congress which

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB

has frustrated the plaintiff because their allegations and accusations have been

unfounded. All of these accusations have been responded to in a number of venues and

Congress has upheld thus far, that FSA has met the intent of their language.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 5/22/06

Chad Padgett