George T. Freeman
Attorney for Plaintiff
1152 P Street
Anchorage, AK 99501
Tel:    (907)274-8497
Fax:    (907)274-8497
Email:  gtf@gci.net


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| KENAI PENINSULA CHAPTER - ALASKA FARM BUREAU, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| MIKE JOHANNS, in his official capacity as the Secretary of the United States Department of Agriculture, UNITED STATES DEPARTMENT OF AGRICULTURE, FARM SERVICE AGENCY, an agency of the United States Department of Agriculture, ALASKA FARM SERVICE AGENCY, an administrative Division of the Farm Service Agency, and CHAD PADGETT, in his official capacity as the State Executive Director of the Alaska Farm Service Agency, | ) ) ) ) ) ) ) ) ) ) ) ) | **REPLY TO OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF AND OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br><br>Case no. 3:06-CV-00098 RRB |
| Defendants. | ) ) ) | |
| _____ | ) | |


1
REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

I.    **Introduction.**

Plaintiff Kenai Peninsula Chapter - Alaska Farm Bureau Inc. replies to Defendants' opposition to Plaintiff's motions for a temporary restraining order and preliminary injunctive relief and opposes Defendants' cross motion to dismiss its complaint on jurisdictional grounds.

Defendants' opposition and cross motion to dismiss are both predicated on the premise that this Court lacks jurisdiction to entertain Plaintiff's suit. Defendants argue that because of their mistaken view on subject matter jurisdiction, it follows that Plaintiff has no likelihood of success on the merits. Defendants also assert that Plaintiff failed to show that its members will suffer irreparable harm if the Homer County FSA Office is closed as presently planned on May 27, 2006. As more fully explained below, Defendants are mistaken on each of these issues and Plaintiff is entitled to injunctive relief and a hearing on the merits of the underlying complaint.[1] At this point, Plaintiff requests a temporary restraining order preserving the status quo and a preliminary injunction keeping the Homer FSA Office open until the Court is able to address the merits of the issues.

As discussed below, the primary issues are the following:

---

[1]    Before considering this reply and opposition, the Court denied the motions for a temporary restraining order and a preliminary injunction on May 24, 2006. Plaintiff is submitting a motion for reconsideration on May 25 with this memorandum that is also being filed today and requests that the Court reconsider its recent order in view of the important issues discussed in this memorandum.

2

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

1.   That the Court has subject matter jurisdiction based on the allegations in the complaint and the first amended complaint under 28 U.S.C. Section 1331.[2] The allegations show federal question jurisdiction based on the need for an interpretation of an act of Congress and the Administrative Procedure Act claim for non-monetary relief under 5 U.S.C. Section 702.

2.   That the proper interpretation of the 2006 act of Congress in Pub. L. 109-97 (the "Act") requires the Defendants to perform a "rigorous analysis [that] proves" that the closing the Homer FSA Office is "cost-effective."

3.   That there is no dispute that the Defendants decided to close the Homer FSA Office before the enactment of Pub. L. 109-97 and that Plaintiff's submissions and Defendants' submissions show that Defendants failed to conduct the "rigorous analysis" that proves that the closing of the Homer FSA Office is "cost effective" as required by the Act.  In sum, no "cost-effective" analysis required by the Act was ever conducted and Defendants have not produced any such an analysis in response to the motion.

4.   Plaintiff has raised a strong likelihood of prevailing on the merits, the possibility of irreparable harm and the balance of the hardships favors Plaintiff, or alternatively, Plaintiff has raised serious issues and the balance

---

[2]    Plaintiff is filing a first amended complaint today as a matter of absolute right under FRCP 15(a) that clarifies the federal subject matter jurisdiction issues.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

of the hardships tips decidedly in favor of Plaintiff.

**II.    This Court has Subject Matter Jurisdiction over the Claims in the Complaint and the First Amended Complaint and the Motion to Dismiss Should be Denied.**

This Court has jurisdiction over the non-monetary claims for declaratory relief, injunctive relief and for a writ of mandamus in the complaint and the first amended complaint.    As discussed below, federal question jurisdiction under 28 U.S.C. Section 1331 is predicated on the federal questions raised by the interpretation of the Act and on the unlawful final federal agency action under the Administrative Procedure Act in deciding to close down the Homer FSA Office on May 27, 2006.    As such, Defendants' FRCP 12(b)(1) motion to dismiss the complaint on jurisdiction grounds lacks merit.

Unlike other motions to dismiss, in a FRCP 12(b)(1) motion on a subject matter jurisdictional issue the Plaintiff must establish jurisdiction, although the burden is not a heavy one.[3]    In this type of motion to dismiss, the court does not presume the factual allegations are true, but instead may weigh the evidence as long is it does not involve the merits of the dispute.[4]    The court may also receive and consider extrinsic evidence.[5]

---

[3]     *See Golden v. Garno Bros.*, 410 F.3d 879, 881 (6ht Cir. 2001); *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1260-61 (11th Cir. 1997) ("extremely difficult" to dismiss claim for lacking subject matter jurisdiction).

[4]     *See Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 77 (3rd Cir. 2003); *Hernandez-Santiago v. Ecolab, Inc*., 397 F.3d 30, 33 (1st Cir. 2005).

[5]     Hernandez-Santiago, 397 F.3d at 33.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

Generally, in a FRCP 12(b)(1) context, the court will permit a party to amend the complaint unless it is clear that subject matter jurisdiction cannot be averred.[6]  Of course, a motion to dismiss is not a responsive pleading that terminates a party's absolute right to amend the complaint without seeking leave of court.[7]  In addition, a well-pleaded complaint will survive a FRCP 12(b)(1) motion to dismiss on jurisdictional grounds where it shows a federal claim on the face of the complaint.[8]

While Plaintiff believes the initial complaint satisfies the jurisdictional pleading requirements, Plaintiff also exercises its absolute right under FRCP 15(a) to file a first amended complaint, which was filed today.  The first amended complaint clarifies the federal question subject matter jurisdiction issues under 28 U.S.C. Section 1331.  In particular, the amended complaint sets forth the federal question subject matter jurisdiction issue of interpretation of a federal statute.[9]  Moreover, the amended complaint sets forth particular allegations supporting the federal question Administrative Procedure Act 5 U.S.C. Section 702 claim for declaratory, injunctive and mandamus

---

[6]     *See Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, 595 (7th Cir. 192) (noting that leave to amend defective allegations of subject matter jurisdiction should be freely given).

[7]     *Mayle v. Felix*, ___ U.S. ____; 125 S.Ct. 2562, 2569 (2005);  *Thompson v. Carter*, 284 F.3d 411, 415 n. 2 (2nd Cir. 2002);  *Shaner v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003).

[8]     *See Franchise Tax Board v. Construction Laborers Vocation Trust*, 463 U.S. 1, 8-12; 103 S.Ct. 2841 (1983); Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 3566 <u>Determination from a Well-Pleaded Complaint</u>.

[9]     *See* First Amended Complaint at paragraphs 1, 34, 43, 45, 48, 50.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

relief based on unlawful final agency action.[10]    These allegations in the first amended complaint satisfy the well-pleaded allegations requirements for pleading federal subject matter jurisdiction.

The complaint, the first amended complaint, the motion and the attachments present a legislative interpretation issue on the 2006 Act. The Court may consider these allegations and the attached extrinsic evidence in reviewing the FRCP 12(b)(1) motion. In particular, Congress restricted the USDA in the 2006 act because of the "negative reaction to the 'FSA Tomorrow' plan" in which the USDA planned to close down hundreds of FSA count offices without consulting Congress.[11]    As a result, the Act severely limited if not removed USDA's discretion in closing or consolidating a FSA county office by requiring a "rigorous analysis [that] proves such action to be cost-effective."[12]    The Defendant agency itself interpreted the Act as requiring a "rigorous analysis to ensure actions are cost-effective and will better serve the public."[13]    The agency interpretation also contemplates public notice and a public meeting within 30 days after the notice if the agency wants to close down a county office; as such, this notice and public meeting could occur only _after_ the restrictions put in place by the Act

---

[10]    _See_ First Amended Complaint at paragraphs 1, 8, 34, 44, 45, 46, 48, 50.

[11]    Complaint, Exhibit 2 at page 6.  Of course, the legislative history of the Act may be considered in interpreting the Act. _See_ 2A Sutherland, _Statutes and Statutory Construction_ (2000 Revision), Section 48:03 Preenactment History; Section 48:04 History of enactment process.

[12]    Complaint, Exhibit 2 at pages 3 and 6.

[13]    Complaint, Exhibit 3 at page 1.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
_Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al._
Case no. 3:06-CV-00098 RRB

("will issue") and requires compliance with the "cost-effective" requirement.[14]    In addition, Plaintiff is unaware of any rules promulgated under the recent 2006 Act, and to Plaintiff's knowledge, there is no administrative appeal remedy to exhaust in the challenge of the closing of a FSA office.

On the issue of federal court subject matter jurisdiction, there is an independent basis for subject matter jurisdiction in the federal question jurisdiction of federal courts under 12 U.S.C. Section 1331.   Of course, a substantial question as to the construction or interpretation of an act of Congress arises under the laws of the United States for purposes of Section 1331.[15]  Moreover, as discussed below, the Administrative Procedure Act provides subject matter jurisdiction in conjunction with Section 1331 over questions involving final agency action.[16]   In this regard, the amended complaint does not seek monetary relief, and instead, only seeks declaratory, injunctive and writ of mandamus relief under 28 U.S.C. Sections 2201, 2202 and 1361.

Finally, Defendants sovereign immunity assertion lacks merit. As the Court knows, the Administrative Procedure Act waives sovereign immunity for non-monetary

---

[14]    Complaint, Exhibit 3 at page 2.

[15]    *See In re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980) ("or the laws of the United States are given one construction or effect, and defeated if they are given another."); *Clark v. Stetson*, 463 F.Supp. 1197, 1199 (M.D.Fla. 1979) ("A suit which substantially involves a dispute respecting the validity, construction or effect of a law of the United States does arise under the laws of the United States for purposes of that statute.").

[16]    *See Chrysler Corp. v. Brown*, 441 U.S. 281, 317 n. 47; 99 S.Ct. 1705 (1979) ("Jurisdiction to review agency action under the APA is found in 28 USC Section 1331.").

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

claims against governmental agencies.[17]   Specifically The APA provides that a person adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review under 5 U.S.C. Section 702.  In this context, "agency action" is defined as "any agency … order … or the equivalent or denial thereof[.]"[18]   In this case, the complaint and amended complaint specifically seek to prevent the USDA from ordering the closing of the Homer FSA Office on May 27, 2006 and requests an order requiring the Defendants to comply with the statutory prerequisites of the Act.

The APA at 5 U.S.C. Section 704 authorizes judicial review if the action at issue is a "final agency action," even though the statute at issue does not directly provide for judicial review.  This requirement is "flexible" and "pragmatic."[19]   To be "final," the agency action (1) must mark the "consummation" of the agency's decision-making process and (2) determines "rights and obligations" or "legal consequences will flow" from the decision.[20]   Here the pre-conceived decision prior to the 2006 Act to close down the Homer FSA Office is a "final agency decision."  It is set for May 27, 2006.  There is

---

[17]     This argument is drawn from *Melissa Indus. Development v. North Collin Water*, 256 F.Supp. 537 (E.D.Tex. 2003), which also involved the USDA.
[18]     5 U.S.C. Section 551(13).
[19]     *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149-50; 87 S.Ct. 1507 (1967).
[20]     *American Airlines, Inc. v. Herman*, 176 F.3d 283, 287-88 (5th Cir. 1999); *Velhorn v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) (a final agency action is one that "imposes an obligation, denies a right or fixes a legal relationship.").

8

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

no further agency review or appeal.[21]  In the statutory scheme, there is nothing left for

USDA to do.[22]

The final agency action at issue in this case is also presumptively subject to

judicial review.[23]  Judicial review of final agency actions may only be cut off under 5

USC Section 701(a) where (1) the statutes preclude judicial review or (2) "the agency

action is committed to agency discretion by law."   Here Congress has not specifically

prohibited court review of the USDA's determination, so the only issue here concerns

agency discretion.

The judicial review exception in 701(a)(2) for agency "discretion" is "very

narrow."[24]  The legislative history of the APA shows that the "discretion" exception

---

[21]     Plaintiff's memorandum at pages 16-17 states the agency action was not "final" in
the sense that plaintiff could not "appeal" the decision under the APA.  This language is
not technically precise.  Instead, the agency action is should be deemed "final" because
there is no administrative appeal from the agency decision under the APA available to the
Plaintiff.

[22]     The first amended complaint alleges that Plaintiff is unaware of any administrative
appeal remedy that needs to be exhausted in order to challenge the unlawful final agency
action, so there is nothing to exhaust administratively.  In addition, federal courts do not
mandate administrative exhaustion if neither the statute nor the agency rules mandate
exhaustion.  *See Darby v. Cisneros*, 509 U.S. 137, 146; 113 S.Ct. 2539 (1993).  Also,
exhaustion is not required where it would be futile.  *See Sierra Club v. Dornbeck*, 161
F.Supp. 1052, 1066 (D.C.Ariz. 2001).

[23]     *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670; 106 S.Ct.
2133 (1986) ("judicial review of a final agency action by an aggrieved person will not be
cut off unless there is a persuasive reason to believe that such was the purpose of
Congress.").

[24]     *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410; 91 S.Ct. 814
(1971).

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

applies only where "statutes are drawn in such broad terms that in a given case there is no law to apply." S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945). In sum, the "discretion" exception only precludes judicial review where the "court would have no meaningful standard to judge the agency's exercise of discretion."[25] If Congress indicates the intent to confine agency discretion and has provided "a meaningful standard for defining the limits of that discretion," there is a "law to apply."[26] When an agency acts, "that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action can at least be reviewed to determine whether the agency exceeded its statutory authority."[27]

In this case, the agency "discretion" exception in 5 USC Section 701(a)(2) does not apply because the 2006 Act of Congress severely limited if not eliminated any agency discretion in closing FSA county offices. That is, the 2006 Act of Congress provides the Court with the "law to apply" in determining if USDA exceeded its authority in ordering the closure of the Homer FSA county office. In particular, the "law to apply" is whether the agency decision ordering the closure of the Homer FSA county office is supported by a "rigorous analysis prov[ing] such action to be cost-effective" and the decision "will better serve the public" In addition, according to the USDA's own interpretation, the "law to apply" requires public notice and a public meeting on these issues <u>after</u> the 2006

---

[25]     *Heckler v. Chaney*, 470 U.S. 821, 830; 105 S.Ct. 1649 (1971).
[26]     *Heckler*, 470 U.S. at 834.
[27]     *Heckler,* 470 U.S. at 832.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

Act of Congress ("will issue public notice").[28]    As discussed below, the Defendants basically admit the decision was made before the 2006 Act, and have failed to produce the "rigorous" analysis that the decision was "cost-effective" in response to the motions.

The complaint and the amended complaint set forth these issues in a well-pleaded complaint.  In view of these statutes and statutory standards, this Court has subject matter jurisdiction of the claims for declaratory, injunctive and mandamus relief set forth in the complaint and the amended complaint.    For these reasons, the FRCP 12(b)(1) motion should be denied.

### III.    The Temporary Restraining Order and the Motion for Preliminary Injunctive Relief Should be Granted.

### A.    Plaintiff has a Strong Likelihood of Success on the Merits.

Defendants' opposition completely misses the point that Public Law 109-97 was enacted subsequent to Alaska FSA State Executive Director Chad Padgett's ("SED") own reorganizing plans.[29]    Moreover, the Defendants did not produce or attach the "rigorous" analysis required by the 2006 Act proving that the closure of the Homer FSA office was "cost-effective." Instead, as shown below, Defendants rely only on their erroneous speculation that the dubious pre-enactment process hopefully somehow complies with the requirements of the Act.

---

[28]    Complaint, Exhibit 3 at page 2.
[29]    *See generally,* Declaration of Chad Padgett, Docket Entry 16-1 at paras. 16-20. All of the procedure relied upon by the task force predates, and was thus preempted by Pub. L. 109-97.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

As an initial matter, Defendants mistakenly assert that "defendants complied with the act's notice and meeting requirements."[30]  That is simply not so.  The Act expressly required that the Secretary notify Congress of its intent to close an office "not later than 120 days before the date on which the Secretary approves the closure."[31]  The Secretary never notified Congress of his intent to close the Fairbanks County Office – rather, the Secretary represented to Congress in his letter of December 9, 2005, that he intended to close the Homer and Delta County FSA Offices.[32]  Defendants' essentially admit this in their pleadings.[33]  Defendants' opposition provides absolutely no evidence that the express congressional notice provision in the Act was satisfied.  Nor is there any evidence that the intent of the Act was satisfied other than the SED's self-serving and unsubstantiated assertion.[34]

Defendants' opposition also wrongly infers that the SED's before-the-fact process constitutes the "rigorous analysis" that Congress intended in the Act. Although Defendants want to offer Exhibit A [Doc. No. 16-2] as evidence that its reorganization

---

[30]    *See id.* at page 11.

[31]    119 Stat. 2120, 2131.

[32]    *See* Exhibit G to Defendants Opposition, Docket Entry No. 16-8, at page 1.

[33]    *See* Declaration of Chad Padgett, Docket Entry 16-1 at page 14. The Secretary's letter of December 9, 2005, is the only evidence presented to support Defendants' claim that the Act's notice requirements were satisfied.  However, the same gives notice of his intent to close Homer and Delta, not Homer and Fairbanks. *See* Exhibit G, Doc. No. 16-8, at page 1.

[34]    *See* Docket Entry No. 16-1, at ¶ 28, pages 19-20.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

plans are justifiable within contemplation of the Act,[35] this is simply not the case. As shown below, the SED's "vision" is nothing more than unsubstantiated speculation.

Moreover, Defendants' reliance on the "circuit rider" concept to justify its reorganization plan is misplaced. The term "circuit rider" is the SED's own invention in the context of FSA. There is no authority anywhere in statute or in regulation to deliver FSA services of benefits via a "circuit rider". In fact, the Secretary of Agriculture is expressly required by statute to use locally elected County Committees to deliver FSA services and benefits. In this regard, the Agricultural Adjustment Act of 1938, Pub. L. No. 75-430, 52 Stat. 31 (originally cited as ch. 30, 52 Stat. 31) provides in pertinent part as follows:

> In carrying out the provisions of this section in the continental United States, the Secretary is directed to utilize the services of local and State Committees as hereinafter provided. . . . The Secretary shall make such regulations as are necessary relating to the selection and exercise of the functions of the respective committees, and to the administration, through such committees, of such programs. (emphasis added).

The regulations relating to the selection and function of FSA committees are found at 7 C.F.R. §§ 7.1-7.38. The same regulations require FSA County Committees "to review, approve, and certify forms, reports, and documents requiring such action in accordance with [official] instructions." 7 C.F.R. § 7.21(b)(4). Agency procedure allows some

---

[35] *See* Docket Entry No. 15 at page 4 (citing Alaska Farm Service Agency Reorganization Plan FY 2005 [Doc. 16-2, "Exhibit A"] for the proposition that the SED's "task force and the Alaska State Committee conducted a very rigorous analysis of County Office Operations.").

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

authority for a County Committee to delegate certain of its responsibilities to its County Executive Director but that authority is very limited.[36]  The term "circuit rider" does not appear anywhere in FSA administrative, personnel or program procedure or regulation and there is no authority for the SED or FSA committees to use a "circuit rider" to deliver FSA programs or services.  It is simply the SED's invention.

The SED apparently coined the term "circuit rider" to describe a process used in Alaska to service Trade Adjustment Act (TAA) benefit applications.[37]  TAA is a temporary program which FSA administered for the Foreign Agricultural Service.[38]  It is not representative or typical of the programs that FSA is responsible for administering under the current or previous farm bills. Consequently, Alaska's use of what the SED has termed a "circuit rider program" for TAA purposes does not support the strained assertion that producers will somehow be better served under the proposed reorganization. Also, the distance between FSA offices has always been valid concern, and was particularly cited as a concern under the now defunct "FSA Tomorrow" plan.[39] Indeed, other states that have engaged in reorganization since passage of the Act have consistently relied upon distance from another office to justify reorganization plans and

---

[36]    *See e.g.,* FSA Handbook 1-PL (Rev.1) Amend. 40 at Exhibit 1, *available at* http://www.fsa.usda.gov/pas/efoia/directives.asp.

[37]    *See* Padgett Declaration [Docket Entry 16-1] at ¶ 10, pages 4-5.

[38]    *See id.*

[39]    *See* Indiana Farm Service Agency Announces "FSA Tomorrow, *available* at http://www.fsa.usda.gov/IN/news (noting that among the objective criteria for consideration for closure was distance between offices).

14

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

to prevent the closing of a particular office.[40]

The SED's "vision" for Alaska FSA also completely ignores the increased travel and salary expenses that will necessarily attend bringing County Committee members from distant parts of the state to the relocated offices.  In this regard, the SED's power point presentation simply cannot be fairly characterized as a "rigorous analysis" that the closing of the Homer FSA Office is  "cost-effective" when it does not even itemize past travel expenditures, much less account for drastically increased expenditures under the planned reorganization.

Moreover, not only did the SED's supposed "vision" omit travel expenditures from the proposed plan, he deliberately ignored contrary analysis.  The Defendants' own evidence demonstrates this problem. The Defendants attached the minutes of the November 17, 2005 public meeting at Homer at Exhibit F to Defendants' pleading [Docket Entry 16-7].  The attendees sitting in the crowded hallway tried to point out to the SED that his analysis was flawed because it ignored increased travel costs.  For

---

[40]     *See* Charles Abbott, Reuter's News Service, *Review targets fewer USDA local office Closures*, April 25, 2006 (noting that five states had submitted reorganization plans thus far – Wyoming, Oregon, Virginia, Nevada and Hawaii. Hawaii and Nevada refused to close any offices.  Nevada justified its plan because its seven field offices were already 60-120 miles apart and serving 18 large counties.  Virginia's plan called for closing nine of its current 50 offices serving 95 counties noting that producers could access the remaining 41 offices with a "reasonable commute." Wyoming plans to close only two of its local offices leaving it with 17.  Oregon's plan calls for closing only one office and servicing its producers from an adjoining county with the SED noting that "farmers often want to talk face-to-face to FSA workers").

15

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

example, the minutes reference comments by Al Poindexter from the Anchorage Association of Conservation Districts:

> Homer made about 30 field visits this year – 28 in Kenai, 2 in Nome and 1 in the Aleutians…he calculated that it would cost about $7,678 from Anchorage or $3,230 from the Homer office.

[Comments of Al Poindexter at page 12].  In addition, the Court should note that there are no estimated travel expenditures for the reorganized offices in the findings offered to justify closing the Homer office. [Exhibit A, Doc. No. 16-2 at page 16].   Completely ignoring known travel costs related to compliance activities that are more than twice what are currently being expended hardly supports the "cost-effective" requirement of the Act.

In sum, the Defendants simply have not provided the "rigorous analysis" that proves that the decision is "cost-effective" as required by the 2006 Act in any of the evidence provided thus far to the Court or the Plaintiff.  Certainly, the pre-Act power point presentation at Defendants' Exhibit A does not contain any "rigorous analysis" that proves the action is "cost-effective" as required by the Act.

Instead, the pre-Act power point presentation for the Alaska FSA at Defendants' Exhibit A merely provides supposition that is error-ridden and simplistic.   For example, Item I South at G of the supposed "Cost Analysis – In Brief" [*see* Doc. No. 16-2 at page 16] reflects current rent in Homer of $15, 000.00 per year and some unknown value for Palmer.  Item H reflects that there would be no rent under his reorganization plan because FSA would not be the lead agency in Anchorage. Again, this is simply not so. In the first

16

place, the original plan did not call for the FSA to be put together with another USDA agency so it would have been the lead (i.e., leasing) agency. Even if it were collocated such that FSA was not the lead agency, FSA would have to reimburse whichever agency was the lead agency either at the state or national level for space leased or services provided by the lead agency on its behalf.

There are other inexplicable contradictions in Defendants' power point presentation at Exhibit A. For example, Defendants claim that closing the Homer office is cost-effective despite the fact that it was the least expensive of all the offices to operate according to their own analysis. [*See* Doc. No. 16-2 at page 23]. Similarly, the SED now argues that program participation is the primary criteria employed in deciding which office to close. [*See* Doc. No. 16-1 at ¶ 30]. However, his "vision", which is the only justification of any sort ever provided by Defendants, was to close the Delta Office (which had the most participation) and keep Fairbanks (which had the next to the least participation) open. [*See* Doc. 16-2 at page 23]. Plaintiff reminds the Court that the recommendations developed by the SED's task force also is not the plan that is being implemented. We also remind the Court that neither the State nor the National Food and Agricultural Council (FAC) ever recommended the plan that is being implemented.

The plan recommended in the power point presentation is the same as that noticed

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

to Congress, which called for closing the Homer and Delta Offices.[41]   However, that is not the plan that is presently being implemented.  As such, Defendants' can not plausibly assert that it has conducted a "rigorous analysis" proving the plan is "cost-effective" when their own speculative proposal [Doc. 16-2] recommends something other than what is being currently implemented.

Under the circumstances, neither the pre-Act proposed plan nor the different plan that is currently being implemented satisfies the Act's "rigorous analysis" proving the plan is "cost-effective."  Indeed, keeping the office in Homer would be less expensive for everyone than moving it to Palmer.  As such, the Court may hold that the Plaintiff has raised serious questions showing a strong likelihood of prevailing on the merits that supports both a temporary restraining order and a preliminary injunction preserving the status quo.

### B.    Closing the Homer FSA Office Raises the Possibility of Irreparable Harm for the Plaintiff and Its Members.

Defendants repeatedly assertion that southern Alaskan producers will not suffer irreparable harm if the Homer office is closed is simply incorrect.  As explained in the foregoing section, Defendants' assertion on this issue presupposes that FSA program participants can be serviced by a currently non-existent circuit rider that is not authorized by current statute and regulation.  Defendants' opposition also presupposes that FSA

---

[41]        *See* Doc. No. 16-8, at page 1.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

programs are static.  Again, that is simply not the case.  FSA has historically been the conduit for emergency and disaster relief for America's rural community and Congress is currently debating disaster legislation that may affect FSA program participation in Alaska.[42]  Moreover, the 2002 Farm Bill expires in 2007 and debate on the next one is already underway.

Even if pending disaster legislation or the new farm bill does not increase program participation through the Homer FSA Office, Defendants' assertion that southern Alaskan producers will not be irreparably harmed by closing the Homer FSA Office is incorrect. Indeed, as stated by the USDA Natural Resource Conservation Service District Conservationist from Homer: "[A] 260 mile separation between producers that they [FSA] work with and the office that serves these people won't work and is doomed to failure."[43]  This is not the sour grapes of some uninformed producer who disagrees with the Agency.   It is the conclusion of a veteran employee of a sister USDA agency who, like the Plaintiff, understands that any reasonable opportunity for southern Alaskan producers to participate in FSA programs and services will disappear with the closure of the Homer office. [44]

---

[42]    The Emergency Agricultural Disaster Assistance Act of 2006 was introduced as Senate Bill 2438 on March 16, 2006.

[43]    *See* comments of Mark Kinney in Minutes of the Homer Public Meeting, Exhibit F to Defendants' pleading [Docket Entry 16-7] at page 10.

[44]    Homer County is the largest geographic county in the nation. [Doc. No. 16-2 at page 10].

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

The foregoing sentiment is also rooted in an understanding that, despite Defendants' assurances, FSA program participation requires that a producer visit their local office. For example, the Defendants' do not explain how they would handle a program appeal for a producer from Homer or Kodiak. County Committee authority to entertain or resolve a producer appeal cannot be delegated to a County Executive Director or subordinate County Office employee – let alone a "circuit rider." Under the proposed pre-Act plan, a remotely served producer is faced with losing his right to appeal if he cannot afford to travel to Palmer to meet with the County Committee. It is also doubtful that the County Committee will travel to Homer or Kodiak to hear an appeal.

Another example is the FSA borrower who wants to make his installment payments by cash rather than mailing a check. Presently, he or she can make payments through the Homer Office and receive a receipt. The borrower is certainly harmed if he is unable to fly or drive from Kodiak or Homer to Palmer instead of being able to make payments through the existing office at Homer. The fact that current borrowers may mail their checks is irrelevant. They are irreparably harmed by being denied an opportunity which otherwise existed. The same holds true for any participant or applicant for any type of FSA benefits or services in southern Alaska because they are harmed by being denied reasonable physical access to the FSA Office that maintains their records or services their location.

The harm for southern Alaskans is significant. For example, if the remote

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

producer doesn't have internet access or telephone service, the 800 number offered by the SED as an avenue to participation is worthless. Moreover, Hurricane Katrina reminds us that communication infrastructure can disappear instantly in the wake of a natural disaster and can take months and months to restore. Common sense suggests that a producer is irreparably harmed if it takes six months to get an application processed remotely instead of one week through the Homer Office.

Like the "circuit rider" concept, Defendants' assertion that southern Alaskans will be better served from an office in Palmer is pure speculation and also inaccurate. This is plainly evident to everyone, including FSA itself. That is the reason the distance to another office was one of the principal criteria of its failed FSA Tomorrow plan. It is also the reason a seasoned District Conservationist stated that servicing Homer producers from Palmer was "doomed to failure." It is also the reason Plaintiff seeks injunctive relief.

### C.    Defendants will not be Unfairly or Disproportionately Burdened.

Defendants incorrectly argue that "the hardships that would be involved if the consolidation plan were stayed would be borne entirely" by them.[45] This is incorrect, since the closing of the Homer office certainly imposes great hardships on the Plaintiff and its members.

Regardless, Defendants maintain that: 1) the current lease for office space in

---

[45]    *See* Docket Entry No. 15 at page 13.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

Homer expires on May 31, 2006; 2) the FSA employee presently in Homer has resigned effective May 27, 2006; 3) that most of the records have already been transferred out of Homer; and 4) that it would have to secure a new lease under an economically disadvantaged bargaining position if forced to keep the office open past June 1 and to temporarily assign an employee to Homer.[46]

It deserves mention at the outset that none of these alleged burdens would be facing the Defendants if they had obeyed the mandate of Congress with respect to their plans to restructure FSA in Alaska.  Congress appropriated in excess of one billion dollars ($1,000,000,000.00) to FSA for FY 2006.[47]  The current lease at Homer costs $15,000 per year.  [Doc. 16-2 at page 8, ¶ G.1.].  With that as a guide, one month's rent would cost $1250.00.  Moreover, since FSA has already given notice of termination, it will no longer be the lead agency. Defendants' own analysis asserts that it does not have any rent expense where it is not the lead agency. [Doc. No. 16-2 at page 16, ¶ H.1.]. Employing the Defendants' simplistic analysis, maintaining office space in Homer would not cost Defendants anything.   Also, any short term extensions of the current lease agreement for office space at Homer would impose, at most, a modest burden on Defendants.   Moreover, Defendants provide absolutely no evidence to support the inference that their disadvantaged bargaining position will result in having to pay more

---

[46]     *See id.*

[47]     *See* Pub. L. No. 109-97; 119 Stat. 2120.

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

than under their current lease. Even if Defendants had to pay relatively more on an amortized monthly basis, the amount would be insignificant.

Defendants also will not have to temporarily assign an employee to Homer when the current employee resigns. FSA County Committees are authorized to keep FSA County Offices open. The Homer County Committee has been consulted and has agreed that it would, if the need arose, be willing to keep their office open on a temporary basis. Consequently, Defendants will not have to shuttle or transfer personnel if the Court grants the temporary restraining order or a preliminary injunction.

While many of the records have already been transferred, the current year operating files are still at the Homer Office.[48] Consequently, producers can still be serviced through the Homer Office. Moreover, Defendants repeatedly assert that producers can access any FSA record remotely such that the producers will not be burdened by closing the Homer Office. Common sense suggests that the information could flow as easily and seamlessly in reverse. Defendants can also provide any necessary records or aerial photography to the producers through the office at Homer until the underlying action is resolved.

Under the circumstances the balance of the hardships decidedly favors the Plaintiff and the participating members and preserving the status quo by keeping the Homer FSA Office open while the Court addresses the merits of the motion and the lawsuit.

---

[48]    *See* Doc. No. 15 at page 13.

23

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB

## CONCLUSION

Under the circumstances, Plaintiff has demonstrated a probable success on the merits and the possibility of irreparable harm, or alternatively, serious questions on the merits and that the balance of the hardships favors the Plaintiff.   Plaintiff respectfully requests that the Court grant the temporary restraining order and the preliminary injunction.   In addition, Plaintiff respectfully requests that the Court deny the FRCP 12(b)(1) motion to dismiss the complaint.

DATED this 25th day of May 2006.


GEORGE T. FREEMAN
Attorney for Plaintiff

s/George T. Freeman
1152 P Street
Anchorage, Alaska 99501
Telephone: 907-274-8497
Facsimile:   907-274-8497
Email: gtf@gci.net
Alaska Bar No. 7806039


**Certificate of Service**
I hereby certify that on
May 25, 2006, a copy of
the foregoing Reply to Opposition
to Motion for TRO and Opposition
to Motion to Dismiss Complaint
was served electronically
on richard.pomeroy@usdoj.gov

s/George T. Freeman

REPLY TO OPPOSITION TO MOTION FOR TRO AND PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS COMPLAINT
*Kenai Peninsula Chapter – Alaska Farm Bureau, Inc. v. Johanns, et al.*
Case no. 3:06-CV-00098 RRB