DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-2344
Email: richard.pomeroy@usdoj.gov

EDWARD H. WHITE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Rm. 6110
Washington, D.C. 20530
Tel: (202) 514-5108
Fax: (202) 318-4268
Email: ned.white@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENAI PENINSULA CHAPTER - ALASKA FARM BUREAU, INC., <br><br> Plaintiff, <br><br> v. <br><br> MIKE JOHANNS, et al. <br><br> Defendants. | Case No. 3:06-00098-RRB <br><br> **MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND WRIT OF MANDAMUS** |

## INTRODUCTION

Despite the fact that the Court has already denied plaintiff's motion for temporary

restraining order and preliminary injunctive relief, and denied plaintiff's motion for

reconsideration of that order, plaintiff is attempting to take yet a third bite at the apple by filing

an amended complaint which unsuccessfully attempts to cure the jurisdictional defects that plagued its original complaint and its corresponding effort to persuade the Court to second-guess the judgment and discretion of the United States Department of Agriculture ("USDA") in deciding to close the Farm Service Agency ("FSA") office in Homer, Alaska and consolidate it with another FSA office in Palmer, Alaska.  For essentially the same reasons the Court denied plaintiff's motion for temporary restraining order and preliminary injunctive relief, the Court should dismiss plaintiff's First Amended Complaint for Declaratory Relief, Injunctive Relief and Writ of Mandamus ("First Amended Complaint").

First, the Court continues to lack jurisdiction to entertain this suit.  The statutory provisions invoked by plaintiff either fail to constitute a waiver of the United States' sovereign immunity or otherwise form an insufficient basis for the Court to exercise jurisdiction over this matter. Although the First Amended Complaint now specifically relies on the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq., see First Amended Complaint ¶ 1 (dkt. no. 21) (May 25, 2006), which does waive the United States' sovereign immunity for certain types of injunctive and declaratory actions, the APA's waiver does not apply here because plaintiff is challenging actions that are committed to agency discretion by law, and which therefore are not subject to judicial review under the APA.  See 5 U.S.C. § 701(a)(2).  Contrary to plaintiff's assertions, the substantive statute that plaintiff principally relies upon – the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act for Fiscal Year 2006 ("Public Law 109-97") – does not require a "rigorous analysis" to ensure that any office closure will be "cost effective."  Rather, the statute merely requires the USDA to hold public meetings and provide notice to certain congressional committees and members of any plans to close local

or county FSA offices before the decisions are finalized.  Significantly, that statute leaves it entirely to the discretion of the agency to determine which, if any, offices to close.  Accordingly, plaintiff's claims should be dismissed for lack of subject matter jurisdiction.

Moreover, the First Amended Complaint should be dismissed because this case is moot. After the Court twice rejected plaintiff's attempts to obtain a temporary restraining order and preliminary injunction to prevent the closure of the Homer FSA office, the Homer office was formally and officially closed as of June 1, 2006.  As a result, there is no active case or controversy to be litigated and the Court should dismiss plaintiff's First Amended Complaint.

## <u>STATUTORY FRAMEWORK</u>

As noted previously in defendants' Opposition to Motion for Temporary Restraining Order and Cross Motion to Dismiss Complaint, (dkt. no. 15) (May 22, 2006) ("Defendants' Opposition), Public Law 109-97, the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act for Fiscal Year 2006, became law on November 10, 2005.  The appropriations act provides "[t]hat none of the funds made available by this Act may be used to pay the salaries or expenses of any officer or employee of the Department of Agriculture to close any local or county office of the Farm Service Agency unless the Secretary of Agriculture, not later than 30 days after the date on which the Secretary proposed the closure, holds a public meeting about the proposed closure in the county in which the local or county office is located, and, after the public meeting but not later than 120 days before the date on which the Secretary approves the closure, notifies the Committee on Agriculture and the Committee on Appropriations of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry and the Committee on Appropriations of the

KENAI PENINSULA CHAPTER v. JOHANNS, et al.
Case No. 3:06-00098-RRB                    3

Senate, and the members of Congress from the State in which the local or county office is located of the proposed closure." 119 Stat 2120, 2131.

## FACTS

As explained in Defendants' Opposition, on November 19, 2004, Chad Padgett, the State Executive Director for the Farm Service Agency, formed a task force to review the delivery of FSA programs in Alaska. Padgett Declaration ¶ 4 (dkt. no. 16-1) (May 22, 2006); Alaska Farm Service Agency Reorganization Plan FY 2005 at 3 (dkt. no. 16-2) (May 22, 2006). The task force was formed to review program delivery in Alaska and to determine whether the most efficient means of delivery was in use, or if the situation needed to change. Id. The task force was to review the FSA's operations in Alaska, keeping service to all producers[1] as the number one priority. Secondary to services, cost efficiencies, good business sense, and the effect on FSA employees were to be considered. Id. The task force was directed to review outreach activities and analyze potential effects to stakeholder groups. Padgett Decl. ¶ 8; Alaska Farm Service Agency Reorganization Plan FY 2005 at 3. The task force and the Alaska State Committee conducted a very thorough analysis of county office operations.

During the time that the task force was considering efficiency, the FSA office administered the Trade Adjustment Assistance Program for Commercial Salmon fishermen (TAA) during FY 2004. The Alaska State Office in Palmer served 4,364 fishermen for a total payout of $5,183,480.00. This was accomplished by using a circuit rider program through which FSA representatives would travel to and deliver services in communities, while all administrative

---

[1] Those who use FSA programs are referred to as "producers."

actions for applications were conducted from the State Office.  This system was found to be highly successful, as employees located in the field (circuit riders) were able to focus on applicants and their needs, while office needs and administrative work were conducted off-sight (consolidated to the State Office).  This experience was considered when deciding whether to consolidate other functions.  Padgett Decl. ¶¶ 10-11.

The task force recommendations were presented to the State Committee on April 15, 2005.[2]  Id. ¶ 20-g.  The task force considered all options, including maintaining the status quo with county offices in Fairbanks, Delta Junction, Palmer, and Homer, but found that maintaining the status quo was not economical.  The task force recommended consolidation of the state into two offices.  Id.; Alaska Farm Service Agency Reorganization Plan FY 2005 at 17.  The State Committee unanimously approved the recommendation to consolidate operations, closing the Homer office and moving its responsibilities.  Padgett Decl. ¶ 20-g; Alaska FSA State Committee Meeting Minutes April 14-15, 2005 (dkt. no. 16-5) (May 22, 2006).  At this time, and at the meetings on May 2, May 3, and May 12, 2005, the location of the consolidated offices had not been determined.  Padgett Decl. ¶ 21.  The original recommendation called for closing both the Homer and Palmer offices and consolidating their responsibilities in an Anchorage office. Id. ¶ 22.  The Alaska State Food and Agricultural Council met on May 6, 2005 and was informed of the plan.  Id. ¶ 20-i.  Additional meetings were held through May and June, informing the public and soliciting feedback.  Id. ¶¶ 20-j through 20-p.  On June 20, 2005, the Alaska State

---

[2]  The FSA State Committee consists of three Presidentially appointed members and exercises co-equal responsibilities with the State Executive Director.   In addition to the state committee and state executive director, there is a parallel structure at the local level – a county office and a county committee.

Food and Agricultural Council approved the plan and sent a letter to the National Council requesting approval of the plan.  Id. ¶ 20-p.  On August 27, 2005, the Chairman of the National Food and Agriculture Council approved the consolidation plan.  Id. ¶¶ 20-v, 26; Letter from P. Thomas to B.B. Allen (dkt. no. 16-6) (May 22, 2006).  At that time, FSA could have closed the offices without any additional public comment, but the agency felt it was prudent to continue to allow comment on where the consolidated offices would be located .  Padgett Decl. ¶ 26.

After passage of Public Law 109-97 on November 10, 2005, additional statewide meetings were scheduled and held in Wasilla (November 4, 2005), Homer (November 17), Fairbanks (November 30), and Delta Junction (December 1).  Id. ¶¶ 20-dd through 20-oo.  The Secretary of Agriculture then informed Congress on December 9, 2005 of the proposed closure of the Homer office.  Id. ¶ 20-pp; Letter from M. Johanns to R. Bennett (dkt. no. 16-8) (May 22, 2006).  On January 17, 2006, approval was received from the Deputy Administrator for Field Operations of the Farm Service Agency to proceed with the consolidation plans.  Letter from S. Connelly to C. Padgett (dkt. no. 16-9) (May 22, 2006).

The State Committee met on January 19, 2006, to finalize the placement of the consolidated offices.  Padgett Decl. ¶ 20-ss.  Based on the public comment from all four meetings, in which objections to "urbanizing" the agency by moving offices to Anchorage and Fairbanks were heard, the State Committee voted unanimously to locate the consolidated Fairbanks and Delta Junction office in Delta Junction and to locate the consolidated Palmer and Homer office with the State Office in Palmer.  Id. ¶¶ 20-ss, 29-30.  The State Committee allowed for additional public comment and affirmed its decision on January 30, 2006.  Id.  Notification was sent out on January 31, 2006.  Id. ¶ 20-uu.

Plaintiff filed its original complaint in this case on April 28, 2006 (dkt. no. 1-1).  Plaintiff then moved for a temporary restraining order and a preliminary injunction on May 8, 2006 (dkt. no. 3-1), seeking to prevent the closure of the Homer FSA office.  On May 24, 2006, the Court denied plaintiff's motion for a temporary restraining order and a preliminary injunction, finding that plaintiff "has not met any of the established criteria" for preliminary injunctive relief. Minute Order (dkt. no. 18) (May 24, 2006).  On May 25, 2006, plaintiff asked the Court to reconsider its order denying plaintiff's motion for a temporary restraining order and preliminary injunction (dkt. no. 22) and also filed its First Amended Complaint (dkt. no. 21).  The Court denied plaintiff's motion for reconsideration on May 26, 2005 (dkt. no. 24).  The Homer FSA office was permanently closed on June 1, 2006.  See Supplemental Declaration of Chad B. Padgett ("Padgett Supp. Decl.") ¶ 1 (attached as Exhibit A).

## ARGUMENT

## I.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE IT LACKS JURISDICTION TO CONSIDER THEM.

As argued in Defendants' Opposition, it is well-settled that "the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983) (citations omitted).  A suit against an executive department of the United States, or against departmental employees in their official capacities, is a suit against the United States, and is therefore subject to the defense of sovereign immunity.  State of Hawaii v. Gordon, 373 U.S. 57, 58 (1963), FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted).  The bar of sovereign immunity applies even when purely equitable relief is sought.   Beale v. Blount, 461 F.2d 1133, 1137 (5th Cir.1972); Jaffee v. United States, 592

F.2d 712, 717 n.10 (3d Cir. 1979) (citing <u>Malone v. Bowdoin</u>, 369 U.S. 643, 648 (1962)).

"The principle of sovereign immunity protects the federal government from suit except as that immunity is waived." <u>Pena v. United States</u>, 157 F.3d 984, 986 (5th Cir. 1998). Such waiver may not be implied, but "must be unequivocally expressed in statutory text." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996). Furthermore, any such waiver "will be strictly construed . . . in favor of the sovereign." <u>Id.</u> In the absence of a waiver of sovereign immunity, a district court lacks jurisdiction over claims against the United States. <u>Mitchell</u>, 463 U.S. at 212; <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976); <u>Koehler v. United States</u>, 153 F.3d 263, 267 (5th Cir. 1998) ("At its core, sovereign immunity deprives the courts of jurisdiction irrespective of the merits of the underlying claim.").

In this case, plaintiff sues the USDA, the FSA, and the Secretary of Agriculture and the Alaska State Director of the FSA in their official capacities, and seeks equitable, declaratory, and mandamus relief against all the defendants. For the Court to entertain this suit against these federal defendants, then, plaintiff must point to some explicit language in the text of a statute that expressly and unequivocally waives the United States' sovereign immunity.

> **A.     Most of the Statutory Jurisdictional Provisions Plaintiff Identifies Do Not Waive Sovereign Immunity.**

Most of the statutes cited in the First Amended Complaint do not waive the United States' sovereign immunity. <u>See</u> First Amended Complaint ¶ 1. First, 28 U.S.C. § 1331 establishes federal question jurisdiction, and it contains no waiver of sovereign immunity. <u>See, e.g.</u>, <u>Pit River Home and Agr. Co-op Ass'n v. United States</u>, 30 F.3d 1088, 1098 n.5 (9th Cir. 1994); <u>Beale v. Blount</u>, 461 F.2d 1133, 1138 (5th Cir. 1972); <u>Royer v. I.N.S.</u>, 730 F. Supp. 588, 590 (S.D.N.Y.

1990); <u>B. R. MacKay & Sons, Inc. v. United States</u>, 633 F. Supp. 1290, 1295 (D. Utah 1986);

<u>Byrd v. Smith</u>, 693 F. Supp. 1199, 1201 (D.D.C. 1986).  Second, 28 U.S.C. § 2201 allows for

declaratory judgments; it does not confer jurisdiction, nor does it contain a waiver of sovereign

immunity.  <u>See, e.g.</u>, <u>Staacke v. Secretary of Labor</u>, 841 F.2d 278, 280 (9th Cir. 1988);

<u>Amalgamated Sugar Co. v. Bergland</u>, 664 F.2d 818, 822 (10th Cir. 1981) ("It is settled that 28

U.S.C. § 2201 does not confer jurisdiction on a federal court where none otherwise exists.");

<u>Ballistrieri v. United States</u>, 303 F.2d 617, 619 (7th Cir. 1962) (holding that the Declaratory

Judgment Act does not waive sovereign immunity).  Third, the First Amended Complaint's

additional reference to 28 U.S.C. § 2202 also fails to establish a basis for the Court to exercise

jurisdiction over this matter.  Section 2202 is part of the Declaratory Judgment Act and merely

authorizes a court to provide "[f]urther necessary or proper relief based on a declaratory

judgment."  Section 2202 does not augment federal court jurisdiction, thus a court cannot grant

relief under section 2202 unless the court has an independent basis for exercising jurisdiction.

<u>See</u> <u>United States v. Doherty</u>, 786 F.2d 491, 499 n.11 (2d Cir. 1986) (explaining that "a

declaratory judgment court cannot grant 'further relief' under 28 U.S.C. § 2202 unless it has

jurisdiction to do so.").  Fourth, Public Law 109-97 says nothing whatsoever about suits against

the United States, its departments, agencies, or officials.

**B.    The APA's Waiver Of Sovereign Immunity Does Not Apply In This Case.**

Unlike the original complaint, plaintiff's First Amended Complaint explicitly invokes the

Administrative Procedure Act ("APA"), 5 U.S.C. § 551, <u>et seq.</u>, <u>see</u> First Amended Complaint ¶

1, which waives the United States' sovereign immunity for certain types of injunctive and

declaratory actions, <u>see</u> 5 U.S.C. § 702.  The APA's waiver, however, does not apply in this case

because plaintiff is challenging actions that are "committed to agency discretion by law," which are not subject to judicial review under the APA.  5 U.S.C. § 701(a)(2).

It would be difficult to conceive of a more clear example of a matter committed to agency discretion by law than the closing of local or county offices under Public Law 109-97.  The act imposes purely procedural obligations on the USDA before it may close a local or county office.  Public Law 109-97 requires only that:  (1) within 30 days of its decision to propose the closure of a local or county office, the USDA hold a public meeting about the proposed closure in any county where the office it proposes to close is located; and (2) that USDA provide notice to specified members and committees of Congress not later than 120 days before the date the proposed closure is approved.  <u>See</u> Public Law 109-97.[3]  The provision does not mandate what must be included in the notice it requires, other than the fact of the proposed closure, nor does it specify what matters must be discussed at the public meeting, or the duration of any such meeting.  In other words, Public Law 109-97 leaves it entirely up to the Secretary, in the exercise of his discretion, to determine whether an FSA local or county office should be closed.

Plaintiff's repeated assertions that Public Law 109-97 prohibits the closure of local or

---

[3]  Plaintiff's new allegation that defendants failed to comply with the statute's notice and public meeting requirements after the statute's enactment, <u>see</u> First Amended Complaint ¶ 44, is completely unfounded and refuted by the facts.  As explained previously, after the passage of Public Law 109-97 on November 10, 2005, several public meetings were held at various locations in Alaska, specifically including a meeting in Homer on November 17, 2005.  Padgett Decl. ¶ 20-ll; Alaska FSA Restructure Public Meeting in Homer, Alaska Minutes (dkt. no. 16-7) (May 22, 2006).  The Secretary of Agriculture then fulfilled the statute's notice requirement on December 9, 2005 by sending a letter to the appropriate committees and members of Congress informing them of consolidation plans for the Alaska FSA offices, including the closure of the FSA office in Homer.  Padgett Decl. ¶ 20-pp; Letter from M. Johanns to R. Bennett (dkt. no. 16-8) (May 22, 2006).  Accordingly, contrary to plaintiff's allegations, defendants fully satisfied the procedural obligations of Public Law 109-97.

county FSA offices "unless rigorous analysis proves such action to be cost-effective" lack any foundation whatsoever.  See, e.g., First Amended Complaint ¶¶ 6, 44.  Neither that language nor anything like it appears in the text of Public Law 109-97.  Instead, plaintiff has lifted that phrase from a Congressional Research Service ("CRS") report's characterization of a House report that does not reflect the operative language of Public Law 109-97.  See CRS Report for Congress, Agriculture and Related Agencies: FY2006 Appropriations, July 19, 2005, at 3, 6 (attached as Exhibit 2 to Original Complaint (dkt. no. 1) (Apr. 28, 2006)).  In fact, the House report was not consistent with the Senate version of the proposal that became Public Law 109-97.  Id. at 6.  More to the point, in describing the language of the provision as actually enacted, the CRS report states that the provision simply "prohibit[s] the use of salaries and expenses to close any county office unless the Secretary notifies Congress and holds public meetings in the affected counties."  Id.  It is a well-settled principle of statutory interpretation that where, as here, a statute's plain meaning is clear, it is unnecessary even to consider the statute's legislative history.  See, e.g., United States v. Ventre, 338 F.3d 1047, 1052 (9th Cir. 2003); Goswami v. American Collections Enter., Inc., 377 F.3d 488, 492 (5th Cir. 2004) (explaining that courts are not permitted to review legislative history unless a statute's terms are ambiguous).  Accordingly, the unambiguous terms of Public Law 109-97 clearly indicate that FSA office closures are left to the discretion of the Department of Agriculture and not subject to judicial review.[4]

---

[4] Plaintiff's reference to a USDA letter that indicated that "office closures and relocations should occur based on a rigorous analysis to ensure actions are cost-effective and will better serve the public" is also unavailing.  See January 13, 2006 Letter from T. Lasseter to State Executive Directors at 1 (attached as Exhibit 3 to Original Complaint (dkt. no. 1) (Apr. 28, 2006)); First Amended Complaint ¶ 6.  An agency's letter is not sufficient to augment or alter the clear language of a statute.  As demonstrated above, Public Law 109-97 does not contain such

At bottom, plaintiff simply disagrees with the Secretary's decision about how best to allocate the FSA resources in Alaska.  The Supreme Court, however, has found such agency resource allocation determinations (and determinations that rest on discretionary resource allocations) committed to agency discretion by law. See, e.g., Lincoln v. Vigil, 508 U.S. 182 (1993) (finding that Indian Health Service decision to terminate a particular Indian children's health program based on resource constraints was committed to agency discretion by law; "Like the decision against instituting enforcement proceedings, . . . an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources to fund a program at all.' " (quoting Heckler v. Chaney, 470 U.S. 821 (1984)).  And because that decision is one the Congress committed to the Secretary's discretion by law, it falls outside the APA's waiver of sovereign immunity, and this Court lacks jurisdiction to consider plaintiff's challenge to it.[5]

----

language or any other type of language that restricts the USDA's discretion to determine which local or county offices to close.  In any event, USDA, exercising its discretion and expertise, did conduct an extensive analysis to determine how the Alaska FSA offices could be most efficiently operated and consolidated.  See Padgett Decl. ¶¶ 3-20, 31 (explaining that Alaska Farm Service Agency Reorganization Plan developed out of a comprehensive review and thorough analysis of state and county FSA operations in Alaska and detailing the efforts undertaken to establish "the most efficient delivery system to fit Alaska").

[5]  For these same reasons, plaintiff's cursory citation to the Mandamus Act, 28 U.S.C. § 1361, also fails to provide a valid basis for the Court to exercise jurisdiction over this case.  See First Amended Complaint ¶ 1.  Jurisdiction under 28 U.S.C. § 1361 is extremely limited in scope.  "An action in mandamus lies only where the defendant owes a clear, ministerial and non-discretionary duty."  Centra, Inc. v. Hirsh, 630 F. Supp. 42, 45 (E.D. Pa. 1985); see also

## II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE THEY ARE MOOT.

In addition to the fact that decisions to close FSA local or county offices are left to the discretion of the USDA, the First Amended Complaint also should be dismissed because the Homer, Alaska FSA office was already officially closed as of June 1, 2006, rendering this case moot.  "A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution."  In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005); see also Kremens v. Bartley, 431 U.S. 119 (1977) (explaining that there must be a live case or controversy before the court in order for a case not to be moot).

After the Court twice rejected plaintiff's attempts to obtain a temporary restraining order and preliminary injunction to prevent the closure of the Homer FSA office, the Homer office was permanently closed as of June 1, 2006.  Supplemental Declaration of Chad B. Padgett ("Padgett Supp. Decl.") ¶ 1 (attached as Exhibit A).  The FSA employee in Homer resigned on May 27, 2006, and the lease on the office space expired as of June 1, 2006.  Id. ¶¶ 3-4.  As a result, all of the office's records and files have been transferred to the FSA office in Palmer, Alaska, and the Palmer office has already assumed responsibility for servicing the territories previously assigned to the Homer office.  Id. ¶ 4.  Accordingly, plaintiff's requests for court orders requiring

---

Weatherwax v. Fairbanks, 619 F. Supp. 294, 297 (D. Mont. 1985) (explaining that "[s]ection 1361 makes mandamus available to enforce ministerial duties" and dismissing claim for mandamus relief under 28 U.S.C. § 1361 because underlying substantive statute vested discretion in the Secretary of the Interior precluding judicial review).  As explained in the text, Public Law 109-97 leaves it entirely up to the Secretary to determine, in the exercise of his discretion, which FSA offices may be closed, and any ministerial duties to hold public meetings and provide notice were satisfied.  As a result, 28 U.S.C. § 1361 is not an applicable source of jurisdiction in this matter, and the case should be dismissed.

defendants to cease and desist all efforts to close the Homer office and to restore the Homer office are impractical and unavailing.

Under similar circumstances, courts have concluded that closure of facilities at issue in litigation often renders a case moot.  In <u>Bumpus v. Clark</u>, 702 F.2d 826, 826-27 (9th Cir. 1983), for example, the Ninth Circuit dismissed as moot an action seeking relief related to the threatened closure of a nursing home after the nursing home was closed.  All of the home's residents had been moved and the court concluded that it could not grant any effective relief that could undo the closure or prevent the transfer of the residents.  <u>Id.</u> at 827.  Similarly, in <u>Santa Monica Food Not Bombs v. City of Santa Monica</u>, 2006 WL 1666707, *6 (9th Cir. 2006), the Ninth Circuit found that an organization's constitutional challenge to a city ordinance allowing street banners only for city-produced events was moot after the city council closed the designated public forum in which the organization sought to exercise its rights.

As demonstrated above, the Homer office has been closed for weeks and, since that time, all the operations formerly performed there are now being performed at another office.  In view of these developments, there is no longer an active case or controversy to be litigated, and the Court should dismiss plaintiff's First Amended Complaint as moot.

<u>**CONCLUSION**</u>

In light of the fact that decisions about FSA office closures are committed to the discretion of the USDA under Public Law 109-97 and that USDA officials have already exercised that discretion and closed the FSA office in Homer, Alaska, the Court should dismiss plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) because the Court lacks jurisdiction to second-guess these determinations and the case is moot.

Dated: June 30, 2006                    Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General

                                        DEBORAH M. SMITH
                                        Acting United States Attorney

                                        MICHAEL SITCOV
                                        Assistant Director

                                        /s/ Richard L. Pomeroy & Edward H. White
                                        RICHARD L. POMEROY
                                        Assistant U.S. Attorney
                                        222 West Seventh Avenue, #9
                                        Anchorage, Alaska 99513-7567
                                        Tel: (907) 271-5071
                                        Fax: (907) 271-2344
                                        Email: richard.pomeroy@usdoj.gov

                                        EDWARD H. WHITE
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Ave., N.W., Rm. 6110
                                        Washington, D.C. 20530
                                        Tel: (202) 514-5108
                                        Fax: (202) 318-4268
                                        Email: ned.white@usdoj.gov

                                        Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2006, a copy
of the foregoing MOTION TO DISMISS
FIRST AMENDED COMPLAINT FOR
DECLARATORY RELIEF, INJUNCTIVE
RELIEF AND WRIT OF MANDAMUS was
served electronically on
 George T. Freeman.


s/ Edward H. White